No. 44,219

The State of Kansas, *Appellee,* v. Willard V. Crowe, *Appellant.*

(414 P. 2d 50)

Opinion filed May 7, 1966.

*Arthur H. Snyder,* of Hutchinson, argued the cause and was on the brief for the appellant.

*Raymond F. Berkley,* assistant county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, *Richard J. Rome,* county attorney, and *Lane H. Cronhardt,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: Appellant was convicted by a jury of the offense of grand larceny, his posttrial motions were overruled, he was sentenced under the habitual criminal act and he appeals.

The information upon which this prosecution is based charged appellant, referred to hereinafter as the defendant, with the theft of a television set of a value of more than $50.00, belonging to the Crupper Furniture and Appliance Company, R. F. D. 2, Hutchinson.

Evidence for the prosecution revealed the following: The Crupper Furniture and Appliance Company is owned by a copartnership, Lee Crupper being one of the co-owners. It has a warehouse which is maintained separately and apart from the retail sales establishment. Customers do not go into the warehouse unless

accompanied by an employee as they have no business there. On November 12, 1964, at about noon a Mr. Rickman, a salesman for the Crupper Furniture and Appliance Company, went to the warehouse. He further testified:

"A. Well, I went over to the warehouse to get a television set out to bring over to the sales floor, and on the way over I noticed a television set in a car, and as I entered into the warehouse, not knowing whose car, but the back door was open in it, the television set was in the front seat, the back door stood open and I closed the back door on the vehicle as I went by and walked into the warehouse and I met the defendant coming out of the door with a television set in his hand. I asked him where he was going and he said, I work here, and I told him no, he didn't work there, to put that one down and he put it down, and made a run for his car, grabbed the one in the front seat and started back to the warehouse which I made him lay it down and he made a run to get away in his car and I took his keys away from him and held him till I could call Mr. Crupper."

Mr. Rickman detained the defendant and called Mr. Crupper. Rickman remained with the defendant until Mr. Crupper arrived. The box containing the television set which had been in defendant's automobile lay on the ground next to the automobile. Mr. Crupper talked with the defendant and further testified as follows:

"A. Well I conversed with the man, I asked him what he was about and he said something about turning him in and I says well I had to because of other businesses and such we couldn't let him go free and he said he was under a doctor's care and such, and I said well I couldn't help that was someone else's decision and I just couldn't do it, couldn't let him go free, so we called the sheriff."

Mr. Crupper stayed with defendant until the marshal from Haven arrived and thereafter a deputy sheriff, who took defendant into custody. The box containing the television set remained on the ground near the automobile until it was removed by the deputy sheriff. The deputy sheriff tagged both the box and the television set and marked his initials on both items, and he identified the television set and the box offered in evidence at the trial as being the same of which he took possession upon defendant's arrest. The wholesale price of the television set was $99.95 and the retail price was $139.95. About a month prior to the occasion in question Mr. Crupper had seen defendant at the warehouse, right after the noon hour, concerning which he testified over objection as follows:

"A. Well, as I say, I had been in Wichita sometime and come back to the place of business that day and was working on the floor, and a gentleman wanted some merchandise I thought was in the warehouse, I might have in the warehouse he wanted, I walked over, the man did not, he stayed in the

place, I walked over and the defendant was there carrying two small televisions which were in the eleven inch class, he was close to the door, and I asked him what he was doing, he said he worked there, I probably should have known but didn't because I was out of town, I thought they might have hired him. I introduced myself to him, the man shook hands with me immediately, I knew he wasn't a worker, and I say that because it wasn't a good grip.

"He started to light a cigarette and I said, we are not allowed to smoke in the warehouse and he said I'll set these down and step out and I went to look around to see if I could find what I had wanted and he said, could he help me find something and I said, no, I known this warehouse pretty good. I left him there, I went back over to the place and as I went back to the place it wasn't a true employment, I mean it didn't ring true, something was wrong, and I don't know what it was, I walked back in and I started to wait on this customer and excused myself, went back over at that time and he was in his car leaving. I got his license number, went back in to see if the televisions were in the stack, they wasn't sitting in front of the door where he placed them, went back and I couldn't at that time determine if he had taken anything. One of the salesmen, I was close to the door and I said, this is some time expired of course, and I said let's give—.

"Mr. Snyder: Just a minute now I am going to object to any conversation outside of the defendant's presence.

"The Court: Sustained.

"Mr. Rome: You can't unless the defendant was present.

"A. All right, I jumped in a car with another man and we gave chase, we couldn't catch him, we followed, went plumb up to Main Street and couldn't find him so I got and thought it was necessary, I didn't have proof of anything, and I thought it was necessary to check this car out, we did this, we found out who it belonged to, the car, by the license number. We took no action because there was no proof of action, and this is why Mr. Rickman made the statement he made, I've got your man, when he called me.

"Q. Were the two television sets later turned up missing?

"A. No, those televisions I do not know if they were missing or not, I have no way of telling.

"Q. Okay, I believe that is all."

Defendant offered no evidence. His principal challenge here is to the sufficiency of the evidence against him as to the possession or control of the television set, essential to constitute larceny, and as to the identity of the particular property allegedly stolen. Neither complaint has merit. We deal with the latter first. Defendant was charged with and convicted of the theft of the particular television set which was first seen in the front seat of his automobile. From the moment of its initial observation there by Mr. Rickman, the whereabouts and custody of this particular set were shown right up to the time of its receipt in evidence at the trial, thus directly connecting it to defendant. We turn now to the question of the taking. Defend-

ant was found in possession and control of the set, having it in his automobile. The property had been removed, without the consent of the owner, from its rightful place where its owner had placed it or intended it to be. This was a sufficient taking. See *State v. Hook*, 150 Kan. 247, 92 P. 2d 14, wherein it was held that the act of the accused in taking the cattle of another from one part of a pasture to another part of the pasture constituted sufficient possession and deprivation of the owner of the cattle as to make the offense of larceny complete. Defendant not only did not have any satisfactory explanation for his possession of the property so recently stolen but his falsehood to the salesman negatived any innocent intent and his statement to the owner amounted virtually to an admission that he was the taker of the set.

Defendant claims the court erred in failing to instruct the jury on an attempt to commit grand larceny. An attempt to commit a crime is one which, by its very definition, fails of completion (K. S. A. 21-101). The evidence here did not warrant such an instruction. On the contrary, as heretofore indicated, it clearly established all elements of the completed offense with which defendant was charged. The fact that defendant's possession of the property was brief or that he had not completely removed it from the owner's premises prior to detection does not militate against the integrity of the offense (see 3 Underhill's Criminal Evidence, 5th ed., § 592; 52 C. J. S., Larceny, § 6).

Defendant complains of the admission in evidence of the testimony concerning his actions and statements at the warehouse about a month prior to the commission of the offense with which he was charged and convicted. This complaint has no merit. The evidence of defendant's prior misconduct at the warehouse very definitely tended to show a plan or scheme on his part, virtually the same as that used at the time of the commission of the larceny charged against him. Upon both occasions, around the noon hour, defendant was at a place where he had no right to be and when accosted, he accounted initially for his presence by the same fabrication. This evidence of wrongdoing upon the prior specified occasion was admissible pursuant to the exception contained in K. S. A. 60-455, being "relevant to prove some other material fact including motive, opportunity, intent, *preparation, plan*, knowledge, identity or absence of mistake or accident" (emphasis supplied), and the jury was

appropriately instructed as to its scope (see *State v. Wright*, 194 Kan. 271, 398 P. 2d 339; *State v. Poulos*, 196 Kan. 287, 411 P. 2d 689).

Defendant next contends that instead of being charged with grand larceny under the general statute (K. S. A. 21-533) he should have been charged with what is commonly known as "shoplifting" pursuant to K. S. A. 21-535a. The legislature enacted this latter statute in 1959 defining a special class of larceny as a part of legislation dealing with the theft of merchandise offered for sale by a store or other mercantile establishment, which type of theft poses special problems, but we need not go further into that statute. Assuming, without deciding, that defendant could have been charged and convicted under the shoplifting statute, it does not follow that that statute is exclusive of the general larceny statute so that defendant could not be prosecuted under the latter. In 2 Wharton's Criminal Law and Procedure (Anderson, 1959) § 501, we find the rule stated thus:

"The fact that there is a special larceny statute under which the defendant could be prosecuted is not a bar to prosecution for common-law larceny or under a general larceny statute, when the defendant's acts are such as to make him guilty of the latter offense as well as of the violation of the special statute." (pp. 174, 175.)

The principle stated in the aforesaid rule was applied in *State v. Hook*, supra, wherein this court denied appellant's claim of error in his prosecution under the general larceny statute rather than on a special statute denouncing the killing of the cattle of another as a form of larceny. As indicated, defendant here was properly convicted under the general larceny statute.

Defendant makes some complaint respecting his sentencing under the habitual criminal act. The record reveals he was given four days' advance written notice of the intention to invoke the act, the two prior convictions being specifically stated. These convictions were shown in due form to be for robbery for which defendant was sentenced July 17, 1941, in the Superior Court of the State of California in and for the City and County of San Francisco to a term of imprisonment for six years, and for grand larceny for which he was sentenced July 17, 1958, in the District Court of the Thirteenth Judicial District of the State of Montana in and for the County of Yellowstone to a term of imprisonment for two years. Both of these convictions were for felony and no error appears in the application of the habitual criminal act.

Finally defendant complains it was not shown that the offense was committed in Reno county, Kansas. The evidence did reveal the locale as being five miles south of Hutchinson, Kansas, on Kansas State Highways 17 and 96, thus placing it in Reno county and definitely establishing venue in the court which tried defendant. No error being shown in that court's rulings and judgment, they are affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.