No. 46,607

STATE OF KANSAS, *Appellee,* v. ALBERT F. MASQUA, *Appellant.*

(502 P. 2d 728)

Opinion filed November 4, 1972.

*M. C. Slough,* of St. Marys, argued the cause and was on the brief for appellant.

*Edward S. Dunn,* Jackson county attorney, argued the cause, and *Vern Miller,* attorney general, and *James Swoyer, Jr.,* Jefferson county attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: The appellant, Albert F. Masqua, was charged with the offenses of murder in the first degree (K. S. A. 1971 Supp. 21-3401) and forcible rape (K. S. A. 1971 Supp. 21-3502). Venue was changed from Jackson County to Jefferson County. A jury found the appellant guilty of both crimes; he was sentenced to life imprisonment for the first degree murder conviction and a term of not less than five nor more than twenty years for the forcible rape conviction—the sentences to be served consecutively.

The parties have stipulated to an agreed statement of facts

which is found in the record on appeal. The following is a summary of those facts necessary for a disposition of this case.

On August 19, 1970, the body of Eva M. Shields, an elderly woman, was discovered in the bedroom of her home in Holton, Kansas. Following examination and autopsy, it was concluded that she had been the victim of forcible rape and had been murdered. The time of death was ascertained to have been the evening immediately prior to the discovery of her badly beaten body.

Subsequently, on August 20, 1970, the appellant was arrested for vagrancy in Whiting, Kansas. The arrest was made without warrant in a house under the management and control of Melvina Banks, the appellant's aunt. The house was owned by Mrs. Banks' sons. At the time of Masqua's arrest for vagrancy, he was alone in the house and did not have Mrs. Banks' permission to be there, nor did he have the permission of anyone to be in the house. Rather, the record shows he was a resident of Hiawatha, Kansas, and was renting a room at the R & M Hotel in Hiawatha. Seized without warrant was a quantity of clothing found at the house where Masqua was arrested. The clothing was suppressed as evidence, the state making no objection to the suppression.

On August 21, 1970, Don Collins, Jackson County sheriff, and James Malson, of the Kansas Bureau of Investigation, entered the house in Whiting where the appellant was arrested for vagrancy. They had previously been given permission to enter and search by Melvina Banks who, as indicated above, had the management and control of the premises. She had given Collins and Malson the key to the house, and her husband and one of her children accompanied them as they searched. No warrant was issued in connection with the search.

While searching the attic entryway of the house, a pair of trousers was discovered. It was necessary to stand on a table to enter the attic through a trap door in the kitchen. The attic was very dusty; however, the trousers, found some distance back from the attic door, were not. Believing there were bloodstains on the trousers, they were seized and forwarded to the K. B. I. laboratory in Topeka for analysis.

The appellant was convicted of vagrancy; but, because the statute was repealed effective July 1, 1970, the sentence was attacked in habeas corpus proceedings on August 31, 1970, and the appellant was released upon order of the district court.

Upon his release from incarceration on the vagrancy charge,

Masqua was forthwith arrested on the charges of first degree murder and forcible rape. A preliminary hearing was held and he was bound over for trial. An Information was filed October 1, 1970, and when arraigned, the appellant entered a plea of not guilty.

The appellant's motion to change venue was sustained by the district court after concluding that because of pretrial publicity and apparent passion and prejudice against Masqua in the community, there was substantial doubt whether he could receive a fair trial in Jackson County.

Preceding the trial and pursuant to K. S. A. 1971 Supp. 22-3216, the appellant moved to suppress the trousers seized and the evidence derived therefrom. The district court found the search was made with the consent of Mrs. Banks, the person who had control of the house, and the appellant had no standing to object to the seizure as he had no possessory interest or right of control in the premises. The state introduced into evidence the trousers over the objection of the appellant. He here contends the district court erred in refusing to suppress the trousers.

This court is of the opinion the ruling of the district court was proper. The appellant was not legitimately on the premises in question. In fact, the record shows that he was a trespasser in the house at Whiting. As he has claimed no interest in the premises, either possessory or proprietary, he has no standing to invoke the constitutional guaranty from unreasonable searches and seizures. (*State v. Edwards,* 197 Kan. 146, 415 P. 2d 231; *Wheeler v. State,* 202 Kan. 134, 446 P. 2d 777; *State v. Grimmett & Smith,* 208 Kan. 324, 491 P. 2d 549.) Moreover, the record clearly shows the law enforcement officers sought and received the consent of the person who had the management and control of the premises as a condition precedent to searching the house; they were given the key to the premises, and were accompanied on the search by the proprietor's husband and child. It is evident from the record that any objection to the search was voluntarily waived by Mrs. Banks; therefore, it must be concluded the appellant cannot now object. (*State v. Pierson,* 202 Kan. 297, 448 P. 2d 30; *State v. Boyd,* 206 Kan. 597, 481 P. 2d 1015; *State v. Boyle,* 207 Kan. 833, 486 P. 2d 849.)

During the trial the state proffered evidence in its case in chief consisting of the testimony of two women to the effect they had been forcibly raped and sexually molested by the appellant. Prior to admitting the evidence, the district court, in chambers, required the county attorney to state the purpose of the proffer and made

lengthy inquiry into the state's justification for offering the testimony. Counsel for the state advised the court, the appellant, and his counsel, that the proffer was made pursuant to K. S. A. 60-455 to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident on the part of the appellant in the commission of the alleged forcible rape of Eva M. Shields. The court concluded the evidence was admissible for the purpose of showing the appellant's identity, motive, opportunity, intent, preparation, plan and knowledge. Counsel then moved the court pursuant to K. S. A. 60-445 to exercise its discretion and exclude the testimony of both women. The court, having ruled the evidence was admissible, stated it would not exercise its discretion to exclude the evidence pursuant to the statute. Thereupon, the trial was resumed in the courtroom in the presence of the jury.

The evidence of both women was then presented. One woman, referred to as Mrs. X, testified that she was in her home in Holton in September, 1969; that appellant was present and he grabbed her and threw her to the floor and forcibly had sexual intercourse with her against her will, and that she did not report the rape to the police because she was afraid the appellant would return and beat up her and her husband. The second woman, referred to as Mrs. Y, testified that on July 30, 1967, she attended an Indian pow-wow near Kansas City, Missouri, and that about sundown the appellant grabbed her from behind and dragged her ten or twelve feet toward a picnic bench and threw her to the ground; that he attempted to have sexual intercourse with her against her will; that she struggled with appellant, and when she screamed for help he hit her about the face and head several times with his fist, breaking her glasses and injuring her head.

The district court admitted the evidence of both women and cautioned the members of the jury at the time it was admitted that they might consider the evidence only for its value, if any, as to the circumstances bearing upon the appellant's motive, opportunity, intent, preparation, plan, knowledge and identity or absence of mistake or accident. The jury was given a limiting instruction as to the purpose of the evidence and the extent it might consider such evidence in arriving at its verdict.

Counsel for the appellant made no objection as to the scope of the instruction concerning the testimony of Mrs. X and Mrs. Y, and the propriety of the instruction is not before us. The instruction was

not erroneous as a matter of law (*State v. Morgan*, 207 Kan. 581, 485 P. 2d 1371), and it became the law of the case upon the appellant's acquiescence. (*State v. Barbour*, 142 Kan. 200, 46 P. 2d 841; *State v. Booker*, 197 Kan. 13, 415 P. 2d 411; *State v. Patterson*, 200 Kan. 176, 434 P. 2d 808; *State v. Booker*, 200 Kan. 166, 434 P. 2d 801, cert. den. 391 U. S. 965, 20 L. Ed. 2d 879, 88 S. Ct. 2031; *State v. Little*, 201 Kan. 94, 439 P. 2d 387; *State v. Roy*, 203 Kan. 606, 455 P. 2d 512; *State v. Potts*, 205 Kan. 47, 468 P. 2d 78.) However, we enter our caveat to the district courts that instructions concerning the purpose of evidence of similar offenses should only include those elements of K. S. A. 60-455, which appear to be applicable under the facts and circumstances. Those elements which are obviously inapplicable should not be instructed upon.

The appellant contends the district court erred in admitting into evidence the testimony in question because its probative value was substantially outweighed by the prejudicial nature of the recitations. This court disagrees. K. S. A. 60-445 reads:

"Except as in this article otherwise provided, the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered."

The evidence was relevant to the charge of forcible rape against the appellant, and he was in no position to claim surprise. The names of both women were endorsed on the Information when it was filed in the district court of Jackson County on October 1, 1970. The appellant was represented by able counsel, and the trial did not commence in Jefferson County until December 10, 1970. It cannot be said that the appellant did not have opportunity to investigate the testimony of the two women, or to anticipate that their evidence would be offered. Moreover, while independent of the charges in question, the testimony reflected offenses of a similar character; under proper instructions outlining the purpose of such testimony it was admissible as showing identity, guilty knowledge, intent, plan or mode of operation, and motive. (K. S. A. 60-455; *State v. Lewis*, 195 Kan. 389, 405 P. 2d 796; *State v. Poulos*, 196 Kan. 287, 411 P. 2d 689, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63; *State v. Mader*, 196 Kan. 469, 412 P. 2d 1001; *State v. Crowe*, 196 Kan. 622, 414 P. 2d 50; *State v. Darling*, 197 Kan. 471, 419 P. 2d 836; *State v. Morgan*, supra; *State v. Martin*, 208 Kan. 950, 495 P. 2d 89.)

The appellant offered evidence at the trial that he had been drinking beer in a tavern in Holton the night of the murder. He contended he was intoxicated, but there is no evidence indicating the specific degree of intoxication—the evidence merely shows that he purchased beer. Steve Haug testified he had gotten into an argument with the appellant in one of the taverns that night. When asked on cross-examination whether the appellant was intoxicated, Haug responded, "I would think, yes, but I don't know." The appellant did not testify, and Haug's testimony was the only evidence concerning the matter of intoxication.

Counsel requested that the district court instruct the jury not only on first degree murder, but also on second degree murder and manslaughter. The request was premised upon the argument the appellant was intoxicated on the night in question, and the jurors should be given opportunity to ascertain whether the principle of diminished responsibility would be applicable. The district court refused to instruct the jury as requested, the conclusion being that the appellant was either guilty of murder in the first degree or was innocent of any degree of homicide.

It is argued that failure to instruct on second degree murder and manslaughter was error. The point is not well taken. The district court has an affirmative duty to instruct on lesser included offenses even in the absence of a request by defense counsel or the prosecution; however, that duty arises only where the omitted instruction is required by the evidence and under circumstances where the appellant might reasonably have been convicted of a lesser offense if the instruction had been given. (*State v. Winters*, 81 Kan. 414, 105 Pac. 516; *State v. Mason*, 208 Kan. 39, 490 P. 2d 418.)

The facts do not merit a conclusion the instructions on second degree murder and manslaughter were appropriate. The evidence showed the victim was horribly and viciously beaten about the head, face, neck and body. Eleven ribs on one side and three on the other side were broken. Her face was a bloody pulp. The evidence was uncontradicted she was raped during her lifetime near the time of her murder. The district court stated, ". . . now, under these circumstances, the inescapable conclusion is that the defendant is either guilty or he is not guilty of murder in the first degree." The defense was that (1) the defendant did not commit the offenses, and (2) if he did, he was intoxicated. As indicated, Haug's testimony merely inferred the appellant was intoxicated,

but he could not state definitely. The only evidence of any extreme intoxication came from an admission after the defendant was charged with murder in the first degree at Holton, that, "I did it, but the state is going to have to prove it," and that, "I was so drunk I didn't know what I was doing." One who is voluntarily intoxicated cannot escape the consequences of the commission of a crime merely upon the fact he is intoxicated unless he is so intoxicated that he is utterly devoid of consciousness or awareness of what he is doing. Since the appellant did not take the stand, admissions made by him to the effect he was "so drunk he did not know what he was doing" could be considered self-serving and would not be so cogent as to require the giving of the instruction requested. To have given the instruction on the lesser offense "would have permitted the jury to speculate on a degree of homicide not in the case upon any theory." (*State v. Zimmer*, 198 Kan. 479, 504, 426 P. 2d 267, cert. den. 389 U. S. 933, 19 L. Ed. 2d 286, 88 S. Ct. 298.)

More compelling, however, is the character of the charges against the appellant. The state's theory was that he had committed a murder while perpetrating a felony (forcible rape). Homicide while committing a felony is the statutory equivalent to the deliberation and premeditation essential to murder in the first degree. It follows that if the appellant was present at the rape, the mere participation in that felony would supply the elements of deliberation and premeditation, both of which must be absent from second degree murder and manslaughter. Either the rape was perpetrated by the appellant and he necessarily is responsible for the murder, or he was not present at the rape where the killing occurred and not guilty of any degree of homicide. (*State v. Kornstett*, 62 Kan. 221, 61 Pac. 805; *State v. Clough*, 70 Kan. 510, 79 Pac. 117; *State v. Zimmer*, supra.)

We find no error in the record and the judgment is affirmed.

KAUL, J., not participating.