No. 47,883

State of Kansas, *Appellee*, v. Dennis Ray Bradford, *Appellant*.

(548 P. 2d 812)

Opinion
filed April 10, 1976.

*Richard H. Seaton,* of Everett & Seaton, of Manhattan, argued the cause, and was on the brief for the appellant.

*Dennis C. Sauter,* assistant county attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Paul E. Miller,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Dennis Ray Bradford appeals from a conviction of murder in the second degree. He was tried on an information charging him with first-degree murder, committed during the perpetuation of a robbery in violation of K. S. A. 21-3401. He raises these points on appeal: that the court erred in instructing on second-degree murder because that offense is not included within a charge of felony murder; that testimony by a state's witness that defendant had been in prison inflamed and prejudiced the jury; that the court erred in denying defendant the services of a psychiatrist; and that the prosecutor's description, in closing argument, of a blood test not in evidence was improper. This case was well briefed and presented by able counsel.

We turn first to the evidence, which revealed a needless, cruel and bizarre homicide. Dennis Ray Bradford and Carlie Moss spent the evening of June 2, 1974 drinking together and walking around Manhattan, Kansas (Moss testified as a witness for the state). Around midnight, while they were walking down Colorado Street, Bradford said something about robbing somebody, and the two separated. A few minutes later Moss heard Bradford say, "Hand me your billfold" and he heard someone respond that he didn't have one. Moss then rejoined Bradford and recognized the third man as Scott Carlson. Bradford and Moss both struck Carlson who attempted to flee. Bradford again hit Carlson, knocking him down. Carlson fell against the curb and was knocked out. Bradford and Moss then dragged the prostrate Carlson into an alleyway between Pierre and Colorado Streets. Bradford said, "He's already half gone, why not finish him off." Carlson, unconscious, was lying on his back. Bradford picked up a large rock or cement block and struck Carlson repeatedly in the face and head, crushing his skull. Bradford said to Moss, "This is how you kill a man. He won't see anyone no more." Bradford then went through Carlson's pockets, removing a paper pad which Bradford had in his possession at the time of his arrest later that morning.

We will consider first the final three points raised by defendant. Sybil Mings was called as a witness by the state. During her testimony she mentioned that the defendant had been in the reformatory and in prison. The trial court struck the testimony and admonished the jury to disregard it. It is apparent from the record and counsel for the defendant concedes that these statements by the witness

were unsolicited and were not intentionally placed before the jury by the state. Evidence of defendant's prior incarceration was, of course, inadmissible. The court took prompt action to strike it and to admonish the jury.

The defendant is entitled to a fair trial but not a perfect one. Whether inadmissible testimony constitutes harmless or reversible error depends upon the particular evidence and the circumstances of the case in which the question arises. As we said in *State v. Fennell*, 218 Kan. 170, 542 P. 2d 686:

> "A relevant factor in determining whether an erroneous admission of evidence is harmless error is the weight of evidence supporting the conviction. . . . We are convinced upon a review of the whole record that the evidence was of such direct and overwhelming nature and showed appellant's guilt of the two offenses charged to such extent that admission of the California conviction could not have affected the result of the trial and therefore its admission must be deemed harmless error." (p. 174.)

And in *State v. Bly*, 215 Kan. 168, 523 P. 2d 397, we said:

> ". . . [T]he erroneous admission of evidence during a trial does not in every case require a reversal of a conviction. (*State v. O'Neal*, [204 Kan. 226, 461 P. 2d 801].) A defendant is entitled to a *fair* trial but not a perfect one, for there are no perfect trials. (*Brown v. United States*, 411 U. S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565; *Bruton v. United States*, 391 U. S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Not every admission of inadmissible evidence can be considered to be reversible error; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. K. S. A. 60-261 requires the courts of Kansas to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. This rule known as the harmless error rule applies unless the error is of such a nature as to amount to a denial of substantial justice. (*State v. Fleury*, 203 Kan. 888, 457 P. 2d 44.)" (p. 178.)

We have reviewed the entire record in this case. There is a wealth of evidence to support the conviction. Under the facts here disclosed we conclude that the inadvertent reference to defendant's prior incarceration did not prejudice his substantial rights and was but harmless error.

Early in this proceeding the trial court committed Bradford to the State Security Hospital at Larned, presumably under K. S. A 22-3302, for the purpose of a psychiatric examination so that his competency to stand trial might be determined. The court held a hearing for that purpose upon receipt of a written report from the hospital. Defendant and his counsel were present. At the conclusion of the hearing the court determined that Bradford was "able to understand the nature and purpose of the proceedings

against him and to make or assist in making his defense and that he is therefore competent to stand trial."

Upon his arraignment some thirty days later, the defendant requested that the court authorize the obtaining of psychiatric services pursuant to K. S. A. 22-4508. The motion alleged that such services were necessary:

". . . [T]o determine whether defendant was suffering from mental disease or defect at the time of the alleged offense . . . [and] to determine whether this defendant's history of alchol [sic] use, and the effect of alcohol on defendant, produced a mental disease or defect excluding criminal responsibility at the time of the alleged offense."

The journal entry recites that the motion was argued by counsel for both parties and was overruled. No supporting evidence, affidavits or medical records were provided so far as we are informed, and no notice of an intention to rely on the defense of insanity was served pursuant to K. S. A. 22-3219. The oral argument on the motion is not reproduced in the record.

The granting or denial of a motion for psychiatric or other services for an indigent defendant under K. S. A. 22-4508 is a discretionary matter. In *State v. Campbell,* 210 Kan. 265, 500 P. 2d 21, we observed that:

". . . [T]he granting or denial of a motion to provide supporting services to counsel for an indigent defendant in a criminal prosecution is a matter within the discretion of the trial court. Its ruling will not be disturbed in the absence of a showing that the exercise of such discretion has been abused to the extent of prejudicing the substantial rights of the defendant. (*State v. Taylor,* 202 Kan. 202, 447 P. 2d 806; *State v. Young,* 203 Kan. 296, 454 P. 2d 724; and *State v. Frideaux,* 207 Kan. 790, 487 P. 2d 541.)" (p. 274.)

Here the trial court had before it the written motion and the report of the State Security Hospital. It heard the arguments of counsel. Further, the defendant was personally present in court. Upon this record we cannot say that the trial court abused its discretion nor do we believe that the defendant's substantial rights were prejudiced. The record before us discloses no compelling reason why psychiatric services should have been provided. We find no error in this matter.

Defendant's counsel, in closing argument, asked why no test was run on the blood that was on the clothes, to be compared with that of the victim and the defendant. The prosecutor, in closing, responded that there was a test run; that the blood type of Bradford, Moss and Carlson was Type A, and thus the tests proved nothing.

The trial court overruled defendant's objection to the argument. There was nothing in the evidence concerning blood tests.

No rule governing oral argument is more fundamental than that requiring counsel to confine their remarks to matters *in evidence.* The stating of facts not in evidence is clearly improper, and the trial court erred in failing to sustain defense counsel's prompt objection.

However, the question before us is whether the argument was so prejudicial as to deny the defendant a fair trial and thus to require a new trial. We said in *State v. Murrell,* 215 Kan. 10, 523 P. 2d 348:

"We are aware of the rule that misconduct on the part of a prosecutor in going outside the record in the heat of final argument may be so gross and fraught with such prejudice as to deny the accused a fair trial and to require a reversal. (*State v. Kelley,* 209 Kan. 699, 704, 498 P. 2d 87.) Especially has this rule been applied where the prosecuting attorney has persisted in his use of statements calculated to inflame the passions and whet the prejudice of the jury. (*State v. Majors,* 182 Kan. 644, 323 P. 2d 917; *State v. Wilson,* 188 Kan. 67, 360 P. 2d 1092.)" (p. 12.)

The argument here complained of was not inflammatory. It was an attempt by the state to explain the absence of evidence which "doesn't show anything." The prosecutor did not attempt to link the defendant to the crime by reference to the absent tests. Had he argued tests which were not in evidence but which allegedly showed the defendant to have worn clothing containing blood of the type of the deceased alone, our ruling might be otherwise. But under all the circumstances here present, we conclude that the state's argument, though objectionable and improper, was not so prejudicial as to require a new trial. We find error, but not re- versible error.

We turn now to defendant's contention that the trial court should not have instructed on second-degree murder, because it is not included within a charge of felony murder. Murder in the first degree is defined by K. S. A. 21-3401 as follows:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation or committed in the perpetration or attempt to perpetrate any felony."

Second-degree murder is defined by K. S. A. 21-3402 as follows:

"Murder in the second degree is the malicious killing of a human being, committed without deliberation or premeditation and not in the perpetration or attempt to perpetrate a felony."

The trial court instructed on felony murder, as well as murder in the second degree. Defendant objected to the giving of a second-degree murder instruction, contending that second-degree murder is not a lesser included offense of felony murder.

K. S. A. 21-3107 (3) provides as follows:

"In cases where the crime charged may include some lesser crime it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced, even though such instructions have not been requested or have been objected to."

Thus, if the crime charged included lesser offenses, and if the evidence would support a conviction of lesser offenses, it was the duty of the trial court to instruct the jury upon such lesser included crimes. In order to determine whether or not the instructions were proper we shall examine some of our recent decisions dealing with this recurring problem.

The defendant in *State v. Reed*, 214 Kan. 562, 520 P. 2d 1314, was charged with and convicted of felony murder. It was claimed that he killed a store clerk during the perpetration of a robbery. Eyewitness testimony disclosed that he approached the store clerk and demanded the contents of the cash register. He received the money and then demanded more. Told that he had been given all of it, the defendant shot the clerk in the head, causing his death, and then fled. Reed was arrested minutes later carrying the approximate sum missing from the cash register, and a weapon later identified as the one used in the robbery and murder. He sought instructions on the offenses of second-degree murder and voluntary manslaughter. The trial court refused to give those instructions and this court agreed. We said:

"While it is the requirement of K. S. A. 1973 Supp. 21-3107 (3), that instructions on lesser included offenses be given, this duty arises only where there is evidence of circumstances under which the appellant might have reasonably been convicted of the lesser offense. *State v. Masqua*, 210 Kan. 419, 502 P. 2d 728.

"In the past this court has held that in a murder committed during the commission of a felony the usual rule requiring instructions on lesser included offenses does not apply. *State v. Germany*, 173 Kan. 214, 245 P. 2d 981; *State v. Masqua*, supra. If a murder is committed while engaged in a felony the felonious conduct itself is held tantamount to the elements of deliberation and premeditation which are otherwise required for first degree murder. *State v. Osbey*, supra; *State v. Keleher*, 74 Kan. 631, 87 Pac. 738.

"Therefore, to support a conviction for felony murder all that is required is to prove that a felony was being committed which was inherently dangerous

to human life, and that the homicide was a direct result of the commission of that felony. *State v. Moffitt*, 199 Kan. 514, 431 P. 2d 879, Syl. ¶ 5. If such proof is produced the only possible conviction can be that of first degree murder under the felony murder rule.

"This reasoning is aptly explained in *State v. Masqua*, supra, where the appellant was charged with first degree murder and forcible rape. His request for an instruction on the lesser included offenses of second degree murder and manslaughter was denied. This court, in upholding the trial court's denial of the instruction, stated:

" '. . . It follows that if the appellant was present at the rape, the mere participation in that felony would supply the elements of deliberation and premeditation, both of which must be absent from second degree murder and manslaughter. Either the rape was perpetrated by the appellant and he necessarily is responsible for the murder, or he was not present at the rape where the killing occurred and not guilty of any degree of homicide.' (P. 425.)

"So here, either appellant was present when the robbery and attendant murder occurred, or he was not. An instruction on lesser included offenses would have been inappropriate." (pp. 563, 564.)

A similar situation occurred in *State v. Masqua*, 210 Kan. 419, 502 P. 2d 728, cert. den., 411 U. S. 951, 36 L. Ed. 2d 413, 93 S. Ct. 1939. There, the defendant was charged with felony murder in the killing of an elderly woman following the perpetration of a forcible rape upon her. The medical evidence was uncontradicted that the victim was raped during her lifetime near the time of the murder. The trial court refused to instruct on second-degree murder and voluntary manslaughter. In affirming the judgment, and in addition to the quotations set forth above, this court said:

". . . The state's theory was that he had committed a murder while perpetrating a felony (forcible rape). Homicide while committing a felony is the statutory equivalent to the deliberation and premeditation essential to murder in the first degree. . . ." (p. 425.)

We concluded that either the defendant committed the rape and felony murder, or he was not guilty of any degree of homicide.

The circumstances of this case are distinguishable from those in *Reed* and *Masqua*. In those cases the evidence was uncontradicted that a felony had occurred. There was no conflicting testimony. This court therefore held that because the jury could not have found *Reed* and *Masqua* not guilty of the felonies with which they were charged, and yet guilty of the murder charged, instructions on lesser degrees of homicide were inappropriate.

In the case at hand, conflicting evidence was presented as to whether or not the felony charged, robbery, had occurred. The evidence introduced by the defendant was calculated to suggest to the jury that the defendant had not committed the robbery or

else he would have had something in his possession beyond a valueless notepad to show for it. Defendant's evidence indicated that the deceased had a large sum of money with him prior to his death. Defendant had but five dollars in his possession when arrested. Tl.e evidence was thus disputed and unclear as to whether or not a robbery had been perpetrated. Lacking was the clear and uncontroverted evidence of robbery in *Reed*, or of forcible rape in *Masqua*.

The testimony of Carlie Moss, defendant's accomplice, was subject to doubt in part or in whole. He told the police numerous stories, some not involving the defendant, before settling on the story which he told to the jury. The jury might well have believed his testimony as to the manner of the victim's death, but not concerning the attempted robbery.

Felony murder is of course murder in the first degree. The malice, intent, premeditation and deliberation which distinguish first-degree murder from other homicides are supplied by evidence of the felony being committed. Thus the state is relieved from the burden of separately demonstrating these elements. *State v. Lamb*, 209 Kan. 453, 471, 497 P. 2d 275; *State v. Clark*, 204 Kan. 38, 460 P. 2d 586; *State v. Moffitt*, 199 Kan. 514, 431 P. 2d 879.

Ordinarily, in a felony murder case, where the evidence of the commission of the felony is clear and uncontroverted, no instruction on lesser degrees of homicide should be given. But where, as here, there is conflicting evidence as to the commission of the felony, and where the evidence will support a conviction of a lesser degree of homicide, instructions on appropriate lesser degrees should be given.

Felony murder has all of the elements of any other murder in the first degree. The only difference is that in felony murder the prosecution may show malice, premeditation and deliberation by showing that the killing took place during the commission or attempt to commit another felony. First-degree murder, whether felony murder or not, is the highest degree of homicide. Second-degree murder is a lesser included offense.

We find the following cogent comment in 41 C. J. S. Homicide § 392 c, pp. 210, 211:

"It is held or stated that ordinarily, in a felony murder case, the court must charge the various degrees of homicide and may properly refuse to do so when, and only when, no possible view of the facts would justify any other verdict than a conviction of murder in the first degree or an acquittal."

Appellant advances no argument that the judgment is not supported by the evidence. There is an abundance of substantial, competent evidence to support the verdict. The submission of instructions on lower degrees is to a defendant's advantage, and even in the absence of supportive evidence any error in this regard is in his favor. The rule is thus set forth in Am Jur 2d:

". . . [T]he rule supported by most of the courts is that if the evidence demands or warrants a conviction of a higher degree of homicide than that found by the verdict . . . the defendant is not entitled to a reversal or a new trial on the ground that the court instructed on the lower degree of homicide as to which there was no evidence, the theory being that he is not prejudiced thereby and cannot complain. . . ." 40 Am Jur 2d, Homicide, § 533, p. 788.

And see *State v. Carpenter*, 215 Kan. 573, 578, 527 P. 2d 1333; *State v. Yargus*, 112 Kan. 450, 211 Pac. 121; and *State v. Long*, 253 S. W. 729, 732 (Mo.).

While we agree that in a felony murder case no instructions on lesser degrees of homicide should be given where all of the evidence demonstrates that the homicide was committed during the commission of a felony (40 Am Jur 2d, Homicide, § 534), we hold that the rule is otherwise where, as here, evidence of the commission of the felony is disputed or unclear, where the evidence supports instructions on lesser degrees, and where different inferences and conclusions might be drawn by the trier of fact as to which degree of homicide, if any, was committed. *State v. Wilson*, 182 Or. 681, 684, 695, 189 P. 2d 403.

We conclude that the trial court did not err in instructing on murder in the second degree under the facts of this case.

The judgment of the trial court is affirmed.