No. 48,492

STATE OF KANSAS, *Appellee,* v. MAX FRANKLIN, *Appellant.*

(561 P. 2d 860)

Opinion filed March 5, 1977.

*Jay H. Vader,* of Maurin, McCamish and Vader, of Kansas City, argued the cause, and *J. Paul Maurin, III,* of the same firm, was with him on the brief for the appellant.

*Dennis L. Harris,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant-appellant, Max Franklin, was charged with murder in the first degree (K. S. A. 21-3401) and aggravated battery (K. S. A. 21-3414). He was convicted by a jury of murder in the second degree (21-3402) and aggravated battery.

The essential facts of the case are not greatly in dispute and are as follows: On August 12, 1975, the defendant Max Franklin was released from the Kansas State Penitentiary. He returned to Kansas City, Kansas, where his wife, Carol Franklin, and two daughters were living. Upon his return to Kansas City, Carol informed him that she could no longer live with him and wanted a divorce. Between August 12, 1975, and August 30, 1975, the defendant repeatedly threatened Carol. He advised her that if he could not have her, he would mess her up so that no one would want her but him. He physically abused her on several occasions and one evening he rammed his fist through the wall of Carol's home and with scissors cut a circular piece from the wall stating to Carol that that was what he was going to do to her. Toward the end of the month of August, Carol moved in with her mother, Doris Ronn, at the latter's residence in Kansas City, Kansas.

On the evening of August 30, 1975, Carol Franklin, James R.

Gilchrist, Doris L. Ronn, and David Bigley went to a private club in Kansas City, Missouri. They returned to the Ronn residence shortly after midnight. Doris Ronn and David Bigley retired for the night in one bedroom. Carol and James Gilchrist went to the back bedroom. On the same evening the defendant went to a private club and consumed alcoholic beverages for two to three hours. According to the defendant he then went to his mother-in-law's house to make arrangements with his wife to take her and the children to a circus on the following day. Upon his arrival at the Ronn house defendant observed a light on in one window and a truck parked in front. He looked in the window and at the trial testified that he saw his wife in bed with another man. He did not recognize this man. According to the defendant he desired to get his wife out of the house and, not knowing what to expect from the stranger, went to his car and obtained a meat cutter's knife. The defendant was a butcher by trade. Armed with the knife defendant proceeded to the house, physically broke down the door, and entered the darkened premises. He was familiar with the house, having been there before. He proceeded to the back bedroom where he had seen his wife with the strange man. From this point on there is a dispute in the evidence as to what occurred.

The state's witnesses heard scuffling and screaming from the back bedroom. Then James Gilchrist walked into the front bedroom, fell partially into a closet and never moved again. He had been fatally stabbed, once in the chest on the left side and once through the armpit on the right side. According to the physician who performed the autopsy, the penetrating wound in the chest was nine inches in depth and required a knife of at least nine inches in length to produce the wound. The chest wound caused Gilchrist's death. The second wound passed through the skin and rib cage and into the lower lobe of the right lung.

Next, Carol Franklin entered her mother's bedroom crawling, dragging her bleeding right leg behind her. Max Franklin followed Carol into the room waving a butcher knife in his right hand repeating again and again, "Let me at her. Let me at her." The defendant said he was going to kill them both. Doris Ronn screamed, "He killed Rusty and Carol is as good as dead." David Bigley then told the defendant that he had done all the damage he could do there and it would be best for him to leave. The defendant stated, "They are going to send me back up there anyway, and I might as well kill them both." David Bigley then said, "You already killed

him and Carol is as good as dead." The defendant thereupon left the Ronn residence and was apprehended later at another place.

The defendant, Max Franklin, testified in his own behalf at the trial. He denied making the statements attributed to him by the state's witnesses and gave a somewhat different version of the tragic happenings in his wife's darkened bedroom. According to the defendant, after obtaining a knife from his car he ran to the house, broke down the front door by running through it, and ran through the living room and dining room into the back bedroom. He went there to get his wife. There is a step down between the dining room and the bedroom. Defendant testified that as he entered the bedroom he fell over the ledge at the top of the step down and fell to the floor of the bedroom. He got up, felt his way to the doorway, stepped back on the ledge, and hollered for someone to please turn on the lights. At that time he still had the knife in his hand and the room was dark. Then someone unknown tackled him. He fell backwards hitting his head on a stand in the dining room causing his glasses to fall to the floor. He felt around in the darkness and found his glasses. He started to put them on and at that time someone landed on top of him. He did not know who the person was or whether the person was male or female. He pushed the person off so he could get up and as he did so his hand felt the blade of a knife which was sticking in the unknown person's body. He pulled it out. He had no further contact with this person and does not know where that person went. The person never touched him again. The defendant sat up and then the lights came on in Doris Ronn's bedroom. He looked again into the back bedroom and saw Carol sitting on the floor with her back to the bed. He went over and picked her up with his left hand. At that time he had the knife in his right hand. He carried Carol into the dining room and Carol seemed to collapse. He tried to talk to her. She said something but he could not remember what it was. At this point the other occupants of the house entered the dining room and discovered that Carol had been stabbed.

At the trial on direct examination Max Franklin testified that when he entered Doris Ronn's home that early Sunday morning he did not have any intention of killing or stabbing anyone. He denied that he had stabbed Carol Franklin or that he had stabbed James Gilchrist. He stated that he never saw Gilchrist and would not know him if he saw him. He did not know that Carol was dating another man. He loved his wife. As we construe the defendant's

testimony his defense was that he did not stab either Carol Franklin or James Gilchrist. Whoever fell upon him in the darkened bedroom must have accidentally fallen on the knife causing the fatal wound. As noted above the defendant denied any intention to kill anyone *when he entered the house.* However, he did not testify as to his intent at the time the stab wounds were inflicted. The defendant's version of the homicide left many questions unanswered. For example, how the three knife wounds could have been inflicted on two different people by accident. It is understandable why the jury concluded that the defendant was guilty of murder in the second degree and aggravated battery. Following his conviction, the defendant appealed to this court claiming trial errors.

The defendant's first point on the appeal is that the trial court erred in admitting into evidence three gruesome photographs. Two of the photographs showed the body of the deceased, James Gilchrist, lying partly in a bedroom closet, with blood all over the floor and the body. The third photograph showed the upper half of Gilchrist's body covered with blood with knife wounds in the chest and under the right arm. The defendant contends that these three pictures were admitted only for the purpose of inflaming the jury. These pictures are not similar to those pictures admitted in *State v. Clark,* 218 Kan. 18, 542 P. 2d 291, or in *State v. Boyd,* 216 Kan. 373, 532 P. 2d 1064.

In *State v. Wilson,* 220 Kan. 341, 552 P. 2d 931, in discussing photographs showing the body of the deceased, we stated:

"In a crime of violence which results in death, photographs which serve to illustrate the nature and extent of the wounds inflicted are admissible when they corroborate the testimony of witnesses or are relevant to testimony of a doctor as to the cause of death even though they may appear gruesome." (Syl. 5.)

Similar holdings may be found in *State v. Campbell,* 210 Kan. 265, 500 P. 2d 21; *State v. Randol,* 212 Kan. 461, 513 P. 2d 248; *State v. Jones,* 218 Kan. 720, 545 P. 2d 323; *State v. Villa & Villa,* 221 Kan. 653, 561 P. 2d 428.

We have examined the testimony in the case concerning the three photographs and find no error in their admission. The pictures served to illustrate the nature and extent of the knife wounds inflicted and were relevant to show the location of the deceased's body and the manner in which the wounds were inflicted. The photographs corroborated the testimony of certain witnesses and tended to show that accidental injury was highly unlikely. We find no error in their admission.

The second point raised on the appeal is that the trial court erred in failing to instruct the jury on the crime of involuntary manslaughter (K .S. A. 21-3404) as a lesser included offense of the crime of first-degree murder. The court did instruct the jury on the crimes of murder in the second degree (K. S. A. 21-3402) and voluntary manslaughter (K. S. A. 21-3403). The defendant requested an instruction on involuntary manslaughter which request was denied.

Where a defendant is charged with murder in the first degree, involuntary manslaughter is considered to be a lesser degree of the crime charged. In *State v. Seelke*, 221 Kan. 672, 561 P. 2d 869, we discussed various cases dealing with the necessity of instructing on involuntary manslaughter in a murder case. We do not deem it necessary to repeat that discussion in this opinion. In many cases we have emphasized that under K. S. A. 21-3107 a trial court's duty to instruct on a lesser degree of a crime arises only where there is evidence upon which the accused might reasonably be convicted of the lesser offense. (*State v. Masqua*, 210 Kan. 419, 502 P. 2d 728; *State v. Clark*, 214 Kan. 293, 521 P. 2d 298; *State v. Gregory*, 218 Kan. 180, 542 P. 2d 1051.)

The basic issue presented on this point is whether the factual circumstances shown by the record in this case required the trial court to instruct on the lesser offense of involuntary manslaughter. We have concluded that the trial court did not err in refusing to instruct on the lesser offense of involuntary manslaughter. Reduced to its essence the defense to the charge of murder in this case was that the defendant did not stab anyone. Although the defendant testified that he did not intend to kill anyone *at the time he entered the house,* he did not testify that he stabbed Gilchrist without the intent to kill him.

It is important to note in this case that there was no evidence whatsoever that the defendant was intoxicated to such an extent as to prevent the existence of an intention to kill. There is no evidence tending to show that the defendant's life was unlawfully threatened by Gilchrist or that the defendant as a result of extreme fear acted impulsively in stabbing Gilchrist. Although the defendant may have been upset by observing his wife in bed with another man, this would have been no justification for the defendant's proceeding to his automobile, selecting a meat cutter's knife, breaking his way into Doris Ronn's home, and then proceeding with knife in hand into the darkened bedroom of his estranged wife. The de-

fendant was the aggressor and self-defense was not available to him as a defense under the circumstances. (K. S. A. 21-3214.) On the basis of the factual circumstances shown in the record, we hold that the trial court did not err in refusing to instruct on the lesser offense of involuntary manslaughter.

The defendant's third and last point is that the trial court erred in not instructing on the crime of simple battery as a lesser offense of aggravated battery as charged in count No. 2 of the information. Under count No. 2 the trial court instructed on aggravated battery (K. S. A. 21-3414) and criminal injury to persons (21-3431) as a lesser offense. The defendant testified that he did not stab Carol Franklin. Since the victim Carol Franklin suffered great bodily harm (a severely disabling knife wound) we hold that there was no evidence to justify an instruction on simple battery under (K. S. A. 21-3412). We find no error in the refusal of the trial court to give an instruction thereon.

For the reasons set forth above the judgment of the district court is affirmed.