**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Arnold Butch COLE,**
**Defendant-Appellant.**

**No. 44852.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 6, 1983.

Davis Biggs, St. Louis, for defendant-appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant Arnold Butch Cole appeals from a conviction in a court-tried case of robbery in the first degree, § 569.020 RSMo 1978, and carrying a concealed weapon, § 571.115 RSMo 1978.[1] He received concurrent sentences of seventeen years and five years, respectively.

On appeal defendant contends that (1) there was insufficient evidence of concealment; (2) there was insufficient evidence of intent for first degree robbery because of evidence of defendant's intoxication; (3) the trial court erred in admitting seized evidence and the victim's identification of defendant because they were tainted by an illegal arrest; (4) the trial court erred in admitting the victim's identification of defendant because the identification procedure was unduly suggestive; and (5) defendant received ineffective assistance of counsel. We affirm.

Although the state correctly asserts that defendant's points on appeal fail to comply with Rule 30.06(d), the argument portion of defendant's brief clarifies the points and we elect to decide them on the merits.

We turn first to defendant's challenge as to the sufficiency of the evidence. In a jury-waived case we review the sufficiency of the evidence as in a jury-tried case. *State v. Turnbough,* 604 S.W.2d 742, 744 (Mo.App.1980). The appellate court is bound to consider as true the evidence most favorable to the state and all reasonable inferences therefrom, disregarding evidence and inferences to the contrary. *State v. Smith,* 621 S.W.2d 94, 95 (Mo.App.1981). We will affirm the conviction if supported by substantial evidence. *State v. Trask,* 581 S.W.2d 417, 418 (Mo.App.1979).

The evidence showed that on October 10, 1979, at 11:15 p.m., Benjamin Conway was

1. All statutory references are to RSMo 1978.  § 571.115 was repealed in 1981.

working alone as an attendant at the Clark Gasoline Station at 4301 Lafayette in the City of St. Louis. Conway walked toward the back room to deposit some money, turned around, and saw a person he later identified as defendant standing behind him holding a large revolver. The lighting was good in the station, and Conway said the man was wearing a three-quarter-length blue jean jacket, white or tan pants, a red or dark stocking cap, a nylon mask, blue tennis shoes and no socks.

Conway attempted to shut defendant out of the back room, but was unsuccessful. In the struggle, the gun fired, the shell hit the wall, and Conway fell to the floor. Defendant grabbed Conway by his hair and hit his head on the concrete floor. After threatening to kill the victim, defendant kicked him several times and ran out of the station carrying the coin changer, the cash box, and a carton of cigarettes. Conway called the police, and when they arrived he described defendant to them.

Two men in a nearby restaurant were alerted and arrived at the Clark Station in time to see defendant, dressed in a red stocking cap, nylon mask, light pants, and a levi jacket, leaving the station with the cash box. One of the witnesses saw defendant holding a gun.

The two individuals pursued defendant. Although they lost sight of defendant in a gangway, they pointed out his direction to the police who arrived eight to ten minutes later. Police Officer Keough, following the witnesses' directions, found defendant crouched down in a stairwell. Defendant was wearing light pants, a blue jean jacket and no socks. After arresting defendant, the police searched him and found a .38 caliber revolver stuck in the waistband of his pants. The coin changer was found at the head of the staircase and the stocking cap, nylon mask, cash box, and carton of cigarettes were found nearby.

In the courtroom, the police officer identified defendant as the person he arrested. Following the arrest defendant was taken to the Clark Station and positively identified by Conway.

Defendant, his father, and his wife testified that defendant had been drinking heavily the night of the crime. Defendant testified that he did not remember anything from the time he left his father's house that night until he woke up in a holdover cell. He testified that he did not commit the crime.

Defendant claims there was insufficient evidence that the weapon he was carrying was concealed. Concealment is a necessary element of the offense of carrying a concealed weapon, *State v. Tate*, 416 S.W.2d 103, 105 (Mo.1967), and generally to meet the test of concealment the gun must not be discernible by ordinary observation. *State v. Payne*, 654 S.W.2d 139, 141 (Mo. App.1983). A weapon is not concealed simply because it cannot be seen from a single vantage point if it is clearly visible from other positions. *State v. Murphy*, 610 S.W.2d 382, 384 (Mo.App.1980). If it can only be seen from one particular vantage point, however, it is considered concealed. *Id.*

Here the weapon was clearly visible to the victim during the robbery and to one of the two witnesses who saw defendant leave the gas station. The police officer, however, found defendant crouched down in a stairwell in a dark backyard. The officer told defendant to come out of the stairwell, placed him under arrest, and when he searched him he found the gun in his waistband. When the officer found him, defendant was wearing a three-quarter-length or long blue jean jacket.

The fact that defendant was wearing a jacket that extended well below his waist, that the gun was found in his waistband, and that it was not discovered until a search of his person, was sufficient to support a finding that the weapon was not discernible by ordinary observation. *See State v. Woolbright*, 495 S.W.2d 637 (Mo. 1973); *State v. Shegog*, 577 S.W.2d 185 (Mo.App.1979); and *State v. Wood*, 562 S.W.2d 699 (Mo.App.1978). We therefore find sufficient evidence of concealment.

■ Defendant also contends the evidence was insufficient to support his first degree robbery conviction because evidence of his intoxication negated the necessary intent. Defendant attempted to invoke the voluntary intoxication defense, § 562.076.-1(1), which became effective January 1, 1979. The defense is available to negate "the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged or of an included offense." § 562.076.1(1). *State v. Helm,* 624 S.W.2d 513, 517 (Mo. App.1981), specifically found the defense inapplicable to first degree robbery because the robbery statute, § 569.020, contains no explicit finding that the offense be committed with purpose or knowing intent. The jury need not assess a defendant's mental state to reach a robbery verdict. 624 S.W.2d at 517. Although defendant attacks the soundness of *Helm,* under the circumstances we need not address this contention. The trial court found defendant's evidence insufficient to raise the defense.

■ Evidence of mere intoxication does not raise the voluntary intoxication defense. *State v. Bienkowski,* 624 S.W.2d 107, 108 (Mo.App.1981). The extreme degree of intoxication required has been expressed in many ways:

" '[U]nless he is so intoxicated that he is utterly devoid of consciousness or awareness of what he is doing', *State v. Masqua,* 210 Kan. 419, 502 P.2d 728, 733 (1972) . . . 'when there is demonstrated a *total* lack of capacity such that the bodily machine completely fails,' *State v. Brant,* [252 S.E.2d 901, 904 (W.Va.1979) ] . . . 'the condition of intoxication must be so extreme as to suspend all reason', *People v. Hayes,* [37 Ill.App.3d 772, 347 N.E.2d 327, 329 (1976) ]."

*State v. Gullett,* 606 S.W.2d 796, 805–806 (Mo.App.1980) *criticized on other grounds in State v. Mannon,* 637 S.W.2d 674 (Mo. banc 1982). Once evidence is presented that this was defendant's condition, any reasonable doubt on the issue requires a finding for defendant. §§ 562.076.2, 556.051; *State v. Gullett,* 606 S.W.2d at 806.

The defendant, his wife, and his father all testified that defendant consumed large quantities of liquor the night of the crime. Both the state's and defendant's expert witnesses agreed defendant had an alcohol abuse problem. Defendant's expert, a licensed clinical psychologist, stated that had defendant consumed the amount of liquor that he claimed to have drunk, he would not have been able to knowingly intend the robbery and "there would have been a severe interaction effect and would have impaired his judgment severely."

Although defendant presented sufficient evidence to support submitting the intoxication defense in a jury-tried case, the trial judge here was not required to believe defendant and his witnesses as to the amount of alcohol defendant had drunk. In this court-tried case we are bound by the trial court's decision on the issue of credibility. *State v. Tippett,* 588 S.W.2d 742, 743 (Mo. App.1979).

■ The court believed the defendant was not intoxicated to a degree negating intent. The evidence of defendant's conduct before, after and during the crime is relevant in determining intoxication. *State v. Gullett,* 606 S.W.2d at 806. The victim did not remember defendant showing signs of intoxication, and neither the victim nor the arresting officer smelled alcohol on defendant's breath. Defendant, apparently aware of the danger of being recognized, wore a nylon mask and stocking cap during the robbery. After the robbery he was able to leave the scene, climb fences, elude two pursuers, and find a hiding place. When police arrested defendant he was conscious and able to accompany them back to the gas station. At the officer's direction, defendant repeated phrases to the victim for identification purposes.

■ The trial court could have found beyond a reasonable doubt that defendant was not intoxicated to the degree required to negate a mental state of purpose or knowledge. *See State v. Lee,* 647 S.W.2d 817 (Mo.App.1983); *State v. Gullett,* 606 S.W.2d at 805–806. We need not decide

whether voluntary intoxication can ever be a defense to first degree robbery.

■ Defendant next claims that his arrest was without probable cause and its illegality tainted the evidence seized from him and the victim's identification of him. To preserve such a contention for our review a defendant must file a pre-trial motion to suppress and object on this ground to the admission of the evidence at trial. *State v. Watson,* 588 S.W.2d 178, 180 (Mo. App.1979). Defendant in effect did neither. Although a previous attorney filed motions to suppress one year before trial, the record does not indicate they were ever heard or that defendant ever requested a ruling on them. Defendant's failure to request a ruling indicates he abandoned the motions to suppress and leaves nothing for our review. *State v. Young,* 534 S.W.2d 585, 588 (Mo. App.1976). Defendant also failed to object on this ground to the introduction of the seized evidence and the identification at trial.

■ We find defendant's contention without merit, although it was not properly preserved for appeal.[2] A police officer may make a warrantless arrest if he has probable cause to believe the person arrested has committed a felony. *State v. Franco,* 625 S.W.2d 596, 602 (Mo.1981). Whether probable cause exists is a pragmatic question to be determined on the facts of each case. *State v. Pruitt,* 479 S.W.2d 785, 788 (Mo. banc 1972).

Two witnesses saw defendant leave the Clark Station about 11:30 p.m. wearing a nylon mask and carrying a cash box. One of them saw a gun in defendant's hand. They followed him across the street and down an alley until they lost sight of him in a gangway between two houses. Hearing a report of the robbery over his patrol car radio, Officer Keogh arrived in the area about seven or eight minutes after the witnesses lost sight of defendant. The witnesses indicated where they had last seen defendant. The officer found defendant crouched in a stairwell one house east of where the witnesses had last seen him. Only defendant's head was visible.

■ Citizen-informants who state they have witnessed a crime may usually be deemed reliable. *State v. Perry,* 499 S.W.2d 473, 475 (Mo.1973). Here the witnesses' reliability was corroborated by the fact that their information led police directly to the defendant and little time passed between when the witnesses last saw defendant and when the police found him. *See Id.* at 476. The police found defendant not far from the crime scene.

The facts and circumstances at the time of the arrest supported probable cause to believe the defendant had committed a felony.

■ Defendant next contends that the victim's identification of him shortly after the crime was so suggestive as to violate his due process rights. He argues that because the victim's in-court identification was based on the improper out-of-court identification, both identifications should have been excluded. Again the necessary motion to suppress was not ruled upon and defendant did not object at trial to either identification. *State v. Johnson,* 549 S.W.2d 627, 633 (Mo.App.1977); *State v. Young,* 534 S.W.2d at 588. Even reviewing the point on the merits, however, we find no error.[2]

■ The victim estimated that the police presented defendant to him for identification within ten to fifteen minutes of the robbery. It is not improper to return a freshly apprehended suspect to the scene of the crime for identification by one who has seen the culprit minutes before. *State v. Maxwell,* 502 S.W.2d 382, 389 (Mo.App. 1973). This general rule is subject to the question of whether there was a likelihood of misidentification. *Id.* We must consider the opportunity of the witness to view the suspect at the time of the crime, the certainty of the witness at the confrontation,

---

**2.** By disposing of this contention on the merits, we determine defendant's claim that trial counsel was ineffective in not preserving the point.

and the length of time between the crime and the confrontation. *State v. Jones,* 528 S.W.2d 14, 16 (Mo.App.1975). Here the witness was certain and the time period very short. Although defendant's face was covered during the crime, the lighting was good and the victim had ample opportunity to see the criminal's dress, build, and the skin color of his hands and ankles. The victim also recognized defendant's voice and noted his bleeding ankles, which were injured during the robbery when the victim attempted to close defendant out of the back room.

We find the identification procedure after the crime did not violate defendant's right to due process. Both the in-court and out-of-court identifications were admissible.

Defendant's final contention is that he received ineffective assistance of counsel. Allegations of ineffective assistance of counsel are generally best handled under Rule 27.26 where they can be more thoroughly explored, rather than on direct appeal. *State v. Mitchell,* 620 S.W.2d 347, 348 (Mo. banc 1981). Although infrequently the record on appeal reveals sufficient facts to finally decide such claims, *State v. Moon,* 602 S.W.2d 828, 836 (Mo.App.1980), this is not so here. We cannot tell from the record on appeal what information was available to trial counsel or what trial strategy he employed. We have determined from the record that counsel's failure to obtain rulings on defendant's motions to suppress was not prejudicial. In all other respects, defendant's claim of ineffective assistance of counsel is denied without prejudice.

Defendant's conviction is affirmed.

REINHARD and CRANDALL, JJ., concur.