No. 49,306

THE STATE OF KANSAS, *Appellee,* v. JOHN R. WARDEN, *Appellant.*

(585 P.2d 1038)

Opinion filed October 28, 1978.

*Michael H. Morgan,* of Ivan O. Poe law firm, of Wichita, argued the cause and was on the brief for the appellant.

*Robert Sandilos,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant, John R. Warden, was convicted of felony murder (K.S.A. 21-3401), aggravated burglary (K.S.A. 21-3716), and aggravated robbery (K.S.A. 21-3427). The evidence presented at the trial was essentially undisputed. On February 21, 1977, Mrs. Nina Berardi was fatally wounded by one shot from a .22-caliber firearm at her home in Wichita. Two days later police officers arrested the defendant. Following his arrest, there was found in the possession of the defendant a .22-caliber pistol and also a flashlight which was identified as similar to one previously observed in the home of the deceased. At the time of the trial, there was admitted into evidence a full confession by the defendant which established that the defendant and a young companion had entered Mrs. Berardi's home armed with a .22-caliber pistol to obtain money from her. During the course of the robbery, the pistol fired and hit Mrs. Berardi in the chest, causing a fatal injury. The evidence indicated the shooting may have been accidental. Following his conviction, the defendant appealed to this court claiming trial errors.

In his first two points on the appeal, the defendant contends that the trial court erred in refusing to suppress the statement given by the defendant to the police officers for the reason that

there was insufficient evidence presented at the suppression hearings to support the trial court's findings that the defendant knowingly, intelligently, and willingly waived his constitutional privilege against self-incrimination. Prior to trial, a hearing on defendant's motion to suppress was heard by Judge Elliot Fry. At this hearing, the court received the testimony of the interrogating detective, Gary Babb, and also that of the defendant, Warden. At the conclusion of the hearing, Judge Fry overruled the motion to suppress. At the trial, the defendant renewed his motion to suppress the confession. A hearing was held outside the presence of the jury before the trial judge, Robert T. Stephan. At this hearing, the state again presented the testimony of detective Babb and again defendant Warden took the stand. Both testified as to the circumstances surrounding the taking of defendant's statement. At the conclusion of the hearing, Judge Stephan overruled the motion to suppress and defendant's confession was admitted into evidence before the jury.

We have carefully considered the testimony of detective Babb and also that of the defendant and have concluded that there is substantial competent evidence to sustain the findings of both Judge Fry and Judge Stephan that the defendant's statement was admissible. Both detective Babb and the defendant testified that the officer fully advised the defendant of his *Miranda* rights by reading them from a card. Both of the witnesses testified that, following the reading of the *Miranda* warnings, the defendant stated to the detective that he understood them. Although the defendant concedes that his *Miranda* rights were explained to him, he contends that he did not voluntarily and knowingly waive his right to remain silent and was, in fact, questioned after the defendant informed detective Babb that he did not want to make a statement to the officer.

It is true that the testimony of detective Babb at the suppression hearings and his testimony at the trial were inconsistent. At one point detective Babb testified that, when he asked the defendant if he wanted to waive his rights, the defendant answered, "Why have you arrested me?" At another point in the hearing, detective Babb testified that he asked the defendant if he wanted to talk and, at first, the defendant responded that he did not want to talk. At another point the detective testified that when he asked the defendant if he was willing to talk, the defendant made no

comment. Finally, detective Babb testified that when he asked defendant if he wished to waive his rights and talk, defendant stated that he did. The defendant at both suppression hearings testified that his *Miranda* rights were explained to him. He did not at any time testify that he informed the officer that he did not want to make a statement nor did he testify that his statement was in any way coerced. The defendant emphasizes that, at the time he was interrogated by the officer, he was eighteen years old but had not completed the ninth grade, and that on the personal history sheet which defendant completed after his arrest, he misspelled the words "Emporia" and "Wichita," and responded with a nonsensical answer to an inquiry regarding his religion. There was also evidence that an intelligence test had indicated the defendant's IQ to be 79.

We have carefully considered the evidentiary record of both suppression hearings and have concluded that there was substantial competent evidence to support the findings of the trial court that the defendant's statement was obtained after his *Miranda* rights were fully explained to him and that the defendant knowingly, intelligently, and willingly waived his privilege against self-incrimination. In reaching this conclusion, we note that it was undisputed that the defendant was advised of his rights and that he stated to the officer that he understood them. Defendant, himself, so testified. The interrogation at the courthouse did not cover an extended period of time. Defendant made incriminating statements only fifteen minutes after the interrogation commenced and only after detective Babb had reviewed in detail the facts known as to how the crime was committed and the defendant's involvement therein. This information had previously been obtained from statements made by the juvenile who participated with the defendant in the crime. Both Judge Fry and Judge Stephan had a full opportunity to observe the defendant's demeanor in presenting his testimony. The mental deficiency of the defendant was simply one factor to be considered by the trial court. *State v. Thompson,* 221 Kan. 165, 558 P.2d 1079 (1976). This is not a case where the defendant was badgered until he decided to talk. As noted above, the period of interrogation was of short duration. The cases cited by the defense counsel in his brief involve more extreme conditions of incarceration, lengthy interrogation, and obvious coercion. Considering the totality of the

circumstances as contai. .ed in the entire record, we have concluded that there is substantial evidence to support the trial court's findings that the statement of the defendant Warden was freely, voluntarily, and intelligently given and was properly admitted into evidence at the trial.

The second point raised on the appeal is that the trial court erred in its refusal to instruct the jury on the lesser offenses of voluntary manslaughter and involuntary manslaughter. We note that, at the conclusion of the evidence, the prosecutor urged the court not to instruct on any of the lesser offenses of homicide since the evidence was undisputed that the homicide occurred during the course of the commission of an aggravated robbery. Over the state's objection, the trial court instructed on second-degree murder. We agree with the state that an instruction on second-degree murder should not have been given. Under our decisions, a trial court is not required to give instructions on lesser included offenses of homicide when the evidence is undisputed that the crime was committed during the commission of a felony. *State v. Branch and Bussey,* 223 Kan. 381, 573 P.2d 1041 (1978). In his brief, counsel for the defendant concedes that there was no evidence presented in the case to contest the fact that the killing occurred during the commission of a felony. The giving of the instruction on murder in the second degree, although erroneous, was actually favorable to the defendant and he has no cause to complain in that regard. The trial court properly refused an instruction on the lesser included offense of voluntary manslaughter and involuntary manslaughter because there was no evidence to support those theories.

The defendant's last point on the appeal is that he was deprived of due process of law because he was not formally arraigned or presented a copy of the amended information. Here the defendant was arraigned with his counsel present on the original information. He was advised by the court that the information was to be amended to exclude the count of premeditated murder so that the defendant would be tried only on the theory of felony murder. Neither the defendant nor counsel requested a new arraignment on the amended information and the case proceeded to trial on the amended information without objection on the part of the defendant. The cases which are cited by the defendant involve situations where the defendant was not represented by counsel at

his arraignment. In this case the defendant had counsel from the very beginning of the prosecution. This case is governed by our decision in *State v. Jakeway*, 221 Kan. 142, 558 P.2d 113 (1976), which holds that a defendant effectively waives formal arraignment when he goes to trial without objection and submits the question of his guilt to the jury.

The judgment of the district court is affirmed.