No. 50,491

STATE OF KANSAS, *Appellee,* v. DEREA L. MARKS, JR., a/k/a LARRY MARKS, *Appellant.*

(602 P.2d 1344)

Opinion filed December 1, 1979.

*G. Edmond Hayes,* of G. Edmondson Hayes, P.A., of Wichita, argued the cause and was on the brief for the appellant.

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, *Vern Miller,* district attorney, and *Jim Turner,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal prosecution in which the defendant, Derea L. Marks, Jr., was convicted of eight felonies. Two separate cases containing multiple counts were tried together. In case 77 CR 1832, the defendant Marks was charged with felony murder, which allegedly occurred in the course of an aggravated robbery of the Wichita Public Scales Station in Wichita on July 18, 1977. Count 2 of that case charged the defendant with the aggravated robbery. The defendant Marks was later charged in case 77 CR 2540 with six separate felonies, consisting of four counts of aggravated robbery (K.S.A. 21-3427) and one count each of burglary (K.S.A. 21-3715) and felony theft (K.S.A. 21-3701[a]).

The charges stem from a burglary and a series of robberies in Wichita during July and August of 1977, beginning with the burglary of the OTASCO store on July 7, 1977, when several handguns were taken, including a .32-caliber pistol later connected with the defendant. Counts 1 and 2 of case 77 CR 2540 charged the defendant with burglary and theft of the OTASCO store. At the trial defendant fully admitted his participation in that burglary. On July 9, 1977, the defendant and a juvenile associate, Willie Richardson, robbed the Universal Service Station in Wichita. For this robbery, the defendant was charged in count 3 of case 77 CR 2540. At the trial defendant admitted his participation in that robbery. On July 13, 1977, defendant and Willie Richardson robbed the Hi-Quality Service Station in Wichita. This robbery was the basis for count 4 of case 77 CR 2540.

On July 18, 1977, defendant and Richardson entered the Wichita Public Scales Station allegedly to commit another robbery. The State claimed that the operator of the station, Virgil C. George, was murdered in the course of the robbery. As noted above, this homicide and robbery are the charges contained in counts 1 and 2 of case 77 CR 1832. On July 21, 1977, defendant

and Richardson robbed the Quik Chik in Derby, Kansas. This robbery was the basis for count 5 of case 77 CR 2540. At the trial the defendant admitted his participation in that crime. Finally, on August 1, 1977, the defendant and Richardson robbed the Sears Store in Twin Lakes Shopping Center in Wichita. This robbery was the basis for the charge contained in count 6 of case 77 CR 2540. As noted above, the two cases were consolidated for trial and the defendant was convicted on all eight counts contained in the two informations. The defendant has appealed to this court claiming trial errors. We will consider each point separately.

I. Denial of Defendant's Motion to Suppress the Gun as Illegally Seized Evidence.

Prior to the trial, the defendant filed a motion to suppress as evidence a .32-caliber pistol taken by police officer Rod Stovall from the defendant's possession on August 6, 1977. This handgun was an important piece of evidence in the case because, following its seizure by officer Stovall, tests made at the Wichita police forensic department established it to be the same gun used in the robbery and shooting death of Virgil C. George at the Wichita Public Scales Station on July 18, 1977. A *Jackson v. Denno* hearing was held on the motion to suppress prior to the trial. The undisputed evidence established the following facts: On August 6, 1977, police officer Stovall was driving his police vehicle in the area of the 900 block of North Volutsia in Wichita. He noticed defendant Marks and Richardson seated in defendant's car parked on the side of the street. As the officer pulled alongside the vehicle, he thought the two young men in the car matched the general description of two men, mentioned in an earlier police dispatch, who were wanted in connection with criminal activities. The police dispatch had described the two wanted men as black males, in their late teens or early twenties, with medium afro haircuts, and weighing somewhere in the area of 150 to 160 pounds. The police officer testified that he stopped his vehicle and walked over to the parked car to "check them out." The police officer admitted that he had no information indicating that the individuals in the car were committing any crime or that they had committed any crime. The police officer did not know either one of the two individuals personally and, as they were seated in the car, he could not observe their bodies from their shoulders down. He could not see whether they were fat or slender. At the

time the officer approached the vehicle, he did not feel that his life was in danger. He had no knowledge of any contraband in the vehicle and was not concerned about the two men fleeing or destroying any contraband. The police officer had in mind only that the two men in the car fit the general description of the two individuals mentioned in the police dispatch who were wanted by the police.

As officer Stovall approached the car, the defendant was in the driver's seat. Richardson was seated to his right. The officer asked the defendant for his name and some identification. In response to the request, the defendant lifted up an arm rest in the middle of the front seat between him and Richardson. When defendant lifted up the arm rest, the officer observed a handgun lying on the seat. The officer saw the defendant reach in the direction of the gun. The officer then drew his own handgun from its holster and ordered defendant not to touch the gun. The officer then seized the gun and arrested the defendant for illegal possession of a weapon in violation of the Wichita city ordinances. Defendant Marks was taken to the police station and later released on his own recognizance. The police retained the gun until the ballistics test had been completed. It was determined that the gun was one of several stolen in the July 7, 1977, burglary of the OTASCO store. The defendant was never charged with a municipal ordinance weapons violation. On August 9, 1977, the defendant was charged in case 77 CR 1832 with felony murder and aggravated robbery of the Wichita Public Scales Station.

Following the presentation of this evidence by the State, the defendant's motion to suppress the gun as evidence was denied by the district court. The trial judge, in denying the motion to suppress, stated:

"THE COURT: As to the motion to suppress, a very interesting motion, extremely interesting case. And I certainly agree with Mr. Hayes when he says this was not a stop-and-frisk. It wasn't. It wasn't an arrest. And it wasn't a search. It was simply an officer asking, according to his testimony, if two individuals who he said might be  .  .  .  someone he was looking for—could show identification. It was not an order to get out of the car or produce their identification. There was no search. And once the weapon was exposed as a result of that request, the officer, of course, was within his rights to seize it for his own protection, if for no other reason.

"There is nothing that I know of in the law that prevents an officer from asking a citizen a question.

"Now it may well be that the citizen might say, if there was no basis for it (Do

you have a driver's license?), the citizen might say, 'Well, it isn't any of your business.' Then if the officer tried to force himself, we might have another point. But the only evidence in this case is, he said, 'Have you got any identification?' . . .

"There is no evidence of any other response, except the sudden exposure of a weapon.

"The motion is overruled."

At the trial the gun was admitted into evidence over defendant's objection.

Defendant Marks contends that the trial court erred in denying his motion to suppress evidence because the police officer obtained possession of the firearm in violation of defendant's right to be free from unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution. The defendant maintains, in substance, that because officer Stovall had insufficient information to suspect the defendant and Richardson of any criminal activities, past or present, the officer was acting unreasonably in approaching defendant's car and requesting defendant's name and identification. The defendant then reasons that, because the officer had no right to approach the defendant and ask for identification, the firearm which he observed when the defendant lifted up the arm rest could not be lawfully seized under the plain view doctrine.

As noted above, the district court held the officer's request to the defendant for identification to be a proper police investigation. We agree with the trial court. It was not a "stop and frisk" under K.S.A. 22-2402, which requires a "reasonable suspicion" that a crime has been committed. Defendant's argument that the description of the two men in the police dispatch was insufficient to support probable cause for an arrest or the reasonable suspicion required for a stop and frisk is inapplicable in this case. Officer Stovall did not approach the defendant to arrest him or to search him. He approached the defendant because he thought defendant might be one of the two young men described in the police dispatch. Officer Stovall's actions were purely investigative and, in our judgment, not improper. While the description of two young, black men of medium height, with medium afros, is admittedly vague, to preclude an officer from asking the name and identification of an individual falling within such a general description would make criminal investigations impossible.

In *Brown v. Texas*, _____ U.S. _____, 61 L.Ed.2d 357, 99 S.Ct.

2637 (1979), a defendant was convicted under a Texas statute making it a crime for a person to intentionally refuse to report his name and address to a police officer, who has lawfully stopped the person and requested such information. The defendant was asked by a police officer for identification which he refused to provide. He was then arrested, charged, and convicted of a violation of the Texas statute. The United States Supreme Court held that the defendant's conviction under the Texas statute should be set aside, since the stopping of the defendant by the police and requiring him to identify himself violated the Fourth Amendment. The court reasoned that since the officer admittedly stopped the defendant purely to obtain his identification and had no reason to suspect that the defendant was engaged in criminal conduct, the stopping was an unreasonable seizure of his person. *Brown* makes it clear that when a police officer, without arresting an individual, stops and restrains him for the purpose of having him identify himself, that constitutes a seizure of his person subject to the Fourth Amendment. It is stated in the opinion that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person, and the Fourth Amendment requires that the seizure be reasonable. *United States v. Brignoni-Ponce*, 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574 (1975). In *Delaware v. Prouse*, 440 U.S. 648, 59 L.Ed.2d 660, 99 S.Ct. 1391 (1979), it was held that a police officer did not have an unfettered discretion to stop an automobile to conduct a license check, unless the stopping was pursuant to a plan embodying explicit limitations on the conduct of individual officers.

For purposes of the Fourth Amendment, the reasonableness of a seizure of a person that is less intrusive than a traditional arrest depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *Dunaway v. New York*, 442 U.S. 200, 60 L.Ed.2d 824, 99 S.Ct. 2248 (1979); *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968). We have concluded that the holding in *Brown v. Texas* is not applicable to the case now before us. Here officer Stovall did not stop the automobile in which the defendant and Willie Richardson were seated; the automobile was parked at the time the officer first observed it. Officer Stovall did not approach the defendant to arrest him or to

search him. There was no stopping or detention of the defendant and, hence, there was no seizure. Under all of the factual circumstances, we hold the police officer had the right to approach the defendant in the car for the purpose of questioning defendant in the course of a criminal investigation. *State v. Holthaus,* 222 Kan. 361, 564 P.2d 542 (1977); *State v. Boone,* 220 Kan. 758, 556 P.2d 864 (1976). Since the officer had a right to be where he was at the time he observed the gun and the defendant's hand moving toward it, the plain view doctrine applied and the gun could be seized without a warrant.

We hold that the police officer acted reasonably in seizing the weapon. The knowledge he had of the general description of the two young men wanted by the police, coupled with the sudden appearance of a pistol in a car occupied by two youths and the movement of defendant's hand toward the weapon, clearly placed the officer in a position of great peril. There was no time for the police officer to get a search warrant. Officer Stovall testified that he immediately arrested the defendant for unlawful possession of a weapon. It is not clear from the record whether the arrest was for the carrying of an unconcealed loaded weapon or the concealment of an unloaded weapon, both of which are violations of the Wichita city ordinances. The fact that the record does not disclose whether or not the weapon was loaded or whether the defendant was ever tried for a violation of a city ordinance does not render the seizure of the weapon by the officer unlawful. Under all of the circumstances, we find that officer Stovall had reasonable grounds for believing that a weapons violation had been committed. It cannot be denied that exigent circumstances were present, requiring officer Stovall to act promptly to protect himself. We hold that the trial court did not err in denying defendant's motion to suppress the firearm as evidence in the case.

II. Failure to Instruct the Jury on Self-defense, Voluntary Manslaughter, and Involuntary Manslaughter.

As his second point on the appeal, the defendant contends that the trial court committed reversible error in failing to instruct the jury on self-defense, voluntary manslaughter, and involuntary manslaughter. In considering this point, we should first consider the testimony presented at the trial and the theories of both the prosecution and the defense.

In proof of its case, the State presented the testimony of Willie Richardson. Richardson testified on direct examination that he and defendant conspired to rob the Wichita Public Scales Station; that they entered the station for that purpose; that they waited until the last customer had left the premises; and that at that time the defendant pulled a gun, demanded money from Virgil George, and started to walk behind the counter. According to Richardson, George told defendant he was not supposed to be behind the counter and apparently started to reach for a drawer whereupon Richardson ran from the station to the defendant's car and got down between the seats. A few minutes later, the defendant ran to the car and they drove away. On cross-examination by defense counsel, Richardson admitted he had given contradictory versions of what happened in a prior statement to the police department, at his own trial in juvenile court, and at the preliminary hearing in this case. Richardson admitted that in a statement he gave to the police department, he stated that George said, "Nigger, get out of my place," and that he saw George hit the defendant with a cane. Richardson further admitted that he had previously stated that there was no prior agreement to rob the scales station and that he and defendant had entered the scales station only to purchase some pop. Another witness, Eddie Bryson, testified that, at a time when he and Willie Richardson were in jail, Richardson had told him that he and his partner went to the place to rob the man, the man raised his cane, and his partner "Larry" shot the man and then they left. It was the State's theory of the case that the defendant Marks had shot Virgil George in the course of an armed robbery.

The theory of the defense, at all times during trial, was that defendant was not present when Virgil George was killed. The defendant testified that he had known Virgil George five or six years prior to the crime and that he and Richardson had stopped at the scales station to get something to drink because it was hot. He talked with Virgil George, stayed a little longer, and then left to go to an auto parts store to get a part for his car. Defendant denied that he knew what happened to George after he left. He denied that he had a gun. He later saw Richardson and noticed that Richardson had a knot and bruise on his head and also on his forearm. Defense witness Jerry Marks testified that Richardson had stated on the evening of the homicide that the man was

hitting him with a cane, the man did not stop, and he shot him. Jerry Marks and Mavis Scott also testified they saw bruises on Richardson's head and forearm which defendant testified were not there before Richardson entered the scales station.

At the time of his death, Virgil George was disabled by a hip injury and had to use a cane to get around. Ronald Eggleston of the Wichita police department testified that, after the homicide, Virgil George's cane was broken with parts scattered around the scales station. Marie McDonald testified that Virgil George was not abusive to people but sometimes used the word "niggers." Lester Shotwell testified that George had a temper and would sometimes use profanity to express his anger.

Defendant contends that this evidence was sufficient to justify an instruction on self-defense. As noted above, at the trial the defense took a firm position that defendant was not present when George was killed. Defendant contends on appeal that, assuming he was present and shot George, the shooting might have been in self-defense and, therefore, it was reversible error for the court to fail to give a self-defense instruction to the jury. In support of his position, the defendant relies on *State v. Smith,* 161 Kan. 230, 167 P.2d 594 (1946), where this court held that the trial court erred in not giving a self-defense instruction, notwithstanding the fact the accused denied she committed the act which caused the death. We have concluded that the evidence presented in this case was not sufficient to require an instruction on self-defense. We recognize that K.S.A. 21-3211 authorizes a person to use force against an aggressor to the extent it appears reasonably necessary to defend himself against the aggressor's imminent use of unlawful force. However, it is well settled that a person cannot use greater force than is reasonably necessary to resist the attack and, furthermore, that self-defense is not available to a person who is committing or attempting to commit a forcible felony. See K.S.A. 21-3214; *State v. Cates,* 223 Kan. 724, 729, 576 P.2d 657 (1978).

In this case, it is important to note that, in his prior statement to the police, Richardson stated that George made the statement, "Nigger, get out of my place" and raised his cane and started hitting the defendant. The words purportedly used by George do *not* indicate an intent to inflict bodily harm but only to compel the defendant to leave the premises. Here the use of a gun by a young man to repel an attack by a disabled 65-year-old man with a cane

would be excessive as a matter of law. It was, therefore, not improper for the trial court to fail to instruct the jury on self-defense on the basis of prior statements made by Richardson, the truth of which he categorically repudiated at the trial.

The defendant next asserts that it was reversible error for the trial court to fail to instruct on voluntary and involuntary manslaughter. Under K.S.A. 21-3107(3), a trial court is required to instruct on any lesser crime when there is evidence introduced under which the defendant might be reasonably convicted of the lesser offense. Such an instruction is required even though such instructions have not been requested or have been objected to. Ordinarily, in a felony-murder case, where the evidence of the commission of the felony is clear and uncontroverted, no instruction on lesser degrees of homicide should be given. *State v. Bradford,* 219 Kan. 336, 342, 548 P.2d 812 (1976). Where, however, the evidence of the underlying felony is weak or inconclusive, instructions on lesser or included offenses should be given if the evidence would support a conviction on such lesser crimes. *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978).

The defendant maintains that the evidence set forth above was sufficient to require the trial court to instruct on the lesser crimes of voluntary and involuntary manslaughter. We do not agree. We have concluded that the evidence in the record before us was not sufficient to require instructions on the lesser offenses of voluntary or involuntary manslaughter. It must be emphasized that Willie Richardson's trial testimony was that he and defendant Marks entered the scales station with the intent to commit a robbery, that defendant demanded money from Virgil George, and that defendant shot George when he reached toward a drawer. The defendant's testimony was that he was not present when the victim, Virgil George, was shot. The testimony of his witnesses tended to show that it was Willie Richardson who shot Virgil George after the defendant Marks had left the premises. There was no testimony by any witness to justify or support a conclusion that the defendant was guilty of either voluntary or involuntary manslaughter. If Virgil George was killed by either defendant Marks or by Willie Richardson in carrying out a conspiracy to commit a robbery then the defendant would be guilty of felony murder. If the jury should conclude that there was no prior conspiracy to commit a robbery and that Richardson

shot George on his own, defendant Marks could not be held criminally responsible for the acts of Willie Richardson since Marks would not be liable as an aider or abettor.

We further have concluded that the evidence brought forth on the cross-examination of Willie Richardson that he had made contradictory statements to the police, at his own trial, and at the preliminary hearings was not sufficient to require instructions on voluntary and involuntary manslaughter. In order for the evidence to be sufficient to require instructions on lesser degrees of the homicide, the testimony supporting such instructions must be offered either by the State or by the defense for the purpose of proving what events occurred at the time the homicide was committed. Contradictory statements of a witness which are offered only for the purpose of destroying his credibility and not as positive evidence to prove the matters contained in the statements are not alone sufficient to require an instruction on the lesser degrees of homicide. In all of the cases where we have required instructions on the lesser degrees of homicide in a felony-murder case, there has been positive testimony of either the defendant or another witness offered for the express purpose of proving a particular version of how the homicide occurred. This was the situation in *Bradford,* in *State v. Boyd,* 216 Kan. 373, 532 P.2d 1064 (1975), and in each of the other cases where the rule has been applied.

It should be noted that in this case the trial court gave an instruction on second-degree murder over the objection of the defendant. Defense counsel objected to an instruction on second-degree murder because he contended there was no evidence to support it. We agree with defense counsel that an instruction on second-degree murder was unnecessary as beyond the scope of the evidence. Although the trial court's instruction on second-degree murder was not required by the court, the giving of such an instruction was error favorable to the defendant. He was not prejudiced by it and hence cannot now complain. *State v. Warden,* 224 Kan. 705, 708, 585 P.2d 1038 (1978), *cert. denied* 441 U.S. 948 (1979).

To summarize, under the credible evidence presented in the record, the defendant was either guilty of a felony murder committed during the course of a planned robbery either by himself or Willie Richardson, or the defendant was not guilty. The issue

was properly submitted to the jury who found defendant guilty of aggravated robbery and felony murder. We find no error in the instructions given to the jury by the trial court in this case.

III. Admission of Lineup Identification.

As his third point, the defendant contends that the trial court erred in overruling his objection to evidence of identification of defendant as the robber, based upon a lineup where defendant's counsel was not notified and afforded an opportunity to be present. As noted above, the defendant was charged in a complaint filed on August 9, 1977, with the felony murder of Virgil C. George and the aggravated robbery of the Wichita Public Scales Station. This charge was filed shortly after the weapon taken from defendant's possession by officer Stovall was tested and determined to be the same gun which fired the bullet killing Virgil C. George. Following the filing of case 77 CR 1832, G. Edmond Hayes was retained as counsel to represent defendant Marks. On November 9, 1977, Mr. Hayes appeared on defendant's behalf at his preliminary hearing. On November 15, 1977, a lineup was held concerning the robberies with which the defendant was subsequently charged in case 77 CR 2540. At the lineup, the defendant was viewed and identified by the victims as one of the robbers in the Universal, Hi-Quality, and Sears robberies. Mr. Hayes was not notified of the lineup. On November 16, 1977, defendant was charged with the other robberies in case 77 CR 2540. These two cases were subsequently consolidated for trial.

Defendant contends that because of the consolidation, defendant's right to counsel in the second case attached with the initiation of prosecution in the first case. Failure to notify or provide counsel for the subsequent lineup is challenged as violating defendant's constitutional right to counsel. The defendant makes no showing that the lineup was unduly suggestive, nor does he allege any prejudice. We hold this point to be without merit. The right to counsel at a post-indictment, pretrial lineup is limited to lineups for identification by witnesses to the crime for which he is *presently* charged. The right does not extend to lineups conducted in the investigation of other independent crimes, even though the defendant is in custody on the prior charge. In *State v. Estes,* 216 Kan. 382, 532 P.2d 1283 (1975), the defendant was free on bond for a previous armed robbery. Subsequently, a lineup was held and he was identified as a perpetrator of another inde-

pendent robbery of which he was convicted in the case then on appeal. The defendant raised the issue that he had been denied representation of counsel at the lineup. The contention of denial of representation by counsel at the lineup was rejected, since, at the time of the lineup, the defendant by his own testimony was not under arrest on the charges for which the lineup was conducted. The same issue was presented in *Boyd v. Henderson,* 555 F.2d 56 (2nd Cir. 1977), which held that the Sixth Amendment right to counsel at a lineup attaches only when there has been a formal charge with respect to the *particular crimes as to which the suspect is being identified.* The fact that the defendant was represented by counsel in connection with other unrelated crimes was irrelevant. We have concluded that defendant's claim of error concerning the pretrial lineup identification must be rejected.

IV. Failure to Compel Completion of Discovery and Permitting Late Endorsement of a Witness.

As his fourth assignment of error, defendant claims that he was surprised and prejudiced by the late endorsement of Eddie Bryson as a witness for the State. The defendant also contends that his right to the effective assistance of counsel was violated by the trial court's failure to compel production of the criminal records of State witnesses prior to the trial. These arguments center around the testimony of Eddie Bryson, who was in the Youth Holding Center in Wichita with Willie Richardson when Willie Richardson was awaiting trial for the killing of Virgil C. George. During that period, Richardson told Bryson that Virgil George had raised his cane and that the defendant Marks had shot George. Bryson gave a signed statement to this effect to a Wichita detective. At Richardson's previous trial in juvenile court, Bryson denied the truth of the statement. In the interim, Eddie Bryson had decided to change his testimony and did so at the trial of the defendant Marks. We note from the record that Bryson was endorsed as a State's witness two days before he actually testified and further that defendant's counsel had in his possession the criminal records of both Richardson and Bryson prior to their taking the stand. In the cross-examination of both Bryson and Richardson, defense counsel thoroughly questioned them as to their past criminal records. We cannot say that the defendant has shown that he was prejudiced in any way, either by the late endorsement of Eddie Bryson as a State witness or by the delay in

delivery of the criminal records of Bryson and Richardson. Defendant's counsel was afforded an opportunity to interview Bryson before he testified. Since no prejudice has been shown, we reject the defendant's fourth point as a basis for reversal of the case.

V. Failure to Give a Limiting Instruction on the Limited Purpose of Prior Crimes Evidence.

Defendant's fifth point of error is that the trial court erred in failing to give a limiting instruction pertaining to the testimony of Willie Richardson as to his and the defendant's intent to rob an audio parts store with a pistol. At the trial, Richardson testified that he and the defendant had conspired to rob an audio parts store and that, once inside the store, Richardson observed a pistol in the defendant's pocket, but that they did not attempt to rob the store as the defendant thought there were too many people coming and going. The defendant and Richardson then proceeded to the Wichita Public Scales Station where the homicide of Virgil C. George occurred. Defendant argues that, if the defendant was not charged with conspiracy to rob the audio parts store, the evidence was admissible only under K.S.A. 60-455 and, therefore, a limiting instruction was required under *State v. Roth,* 200 Kan. 677, 680, 438 P.2d 58 (1968). From a reading of the record we have concluded that the testimony was properly admissible independently of K.S.A. 60-455, as part of the res gestae of the crime of aggravated robbery of Virgil C. George at the Wichita Public Scales Station. The purpose of this evidence was to show the relationship between the defendant and Richardson just prior to the time they entered the Wichita Public Scales Station. It was also relevant to show that the defendant Marks, not Richardson, had possession of the weapon prior to the time of the scales station robbery. The evidence was clearly admissible independently of K.S.A. 60-455. See *State v. Martin,* 208 Kan. 950, 952, 495 P.2d 89 (1972).

VI. Trial Court's Refusal to Grant Defendant's Motion for a Mistrial or a New Trial.

The defendant's sixth and final point on the appeal is the trial court's refusal to grant either a mistrial or a new trial because cumulative errors denied him a fair trial. We have considered each of the claims of error and we cannot find that the trial court abused its discretion in failing to grant a mistrial or a new trial.

*State v. Bell,* 224 Kan. 105, 108, 577 P.2d 1186 (1978), and *State v. Rhodes,* 219 Kan. 281, 283, 546 P.2d 1396 (1976).

The judgment of the district court is affirmed.

FROMME, J., not participating.