NOT DESIGNATED FOR PUBLICATION

No. 126,766

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

NICHOLAS MAINVILLE,
*Appellant.*


MEMORANDUM OPINION

Appeal from Riley District Court; JOHN BOSCH, judge. Submitted without oral argument. Opinion filed August 8, 2025. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before HURST, P.J., HILL and ARNOLD-BURGER, JJ.


PER CURIAM: Claiming two jury instruction errors, Nicholas Mainville asks us to overturn his conviction for knowing aggravated battery. In his first claim, Mainville argues that the court erred when it refused to give the jury an instruction of the law of recklessly causing bodily harm, a lesser included offense instruction. While we agree that the instruction should have been given, we hold that the video evidence presented in this trial shows that this error was harmless.

1

In his second claim of instructional error, Mainville maintains that the court erred by not instructing the jury about his right to self-defense against an imminent use of unlawful force by another. We hold that under the circumstances here Mainville was not factually entitled to use that self-defense instruction. Mainville came out of his home, crossed his property, and approached the victim who had bothered him. She had disengaged and left and was actually standing on the neighbor's property when he struck her.

Thus, we affirm.

*A two-minute confrontation exploded at 1:30 in the morning.*

One morning in August 2022 at around 1:30 a.m., Takeera Griffin walked by Mainville's residence while playing music. Mainville went outside and yelled at her to "turn that fucking music down." Griffin yelled, "Who the fuck are you talking to?" Mainville responded, "I'm talking to you, bitch." Griffin then walked quickly towards Mainville at his front door yelling, "I'm tired of that shit," "Don't holler at me," and so on. Mainville said, "that's it" and went back inside his house. Griffin then walked away, still yelling.

While Griffin was on the neighboring property, Mainville came back outside with what he described at trial as a "24-inch dildo." (Griffin described it as a baseball bat.) While standing near his door, Mainville yelled at Griffin to get away from his property and pointed the object at her. Griffin turned around and repeatedly yelled back, "What'd I say?" Mainville walked toward her onto the neighboring property, yelling, "You want to get beat the fuck down? Get the fuck out of here." Griffin kept yelling, "What'd I say?" Mainville swung the object and hit Griffin in the face.

Griffin walked away saying, "Now you're going to jail." Mainville walked back toward his house and said, "you're dead" and "fuck you." Mainville had fractured

2

Griffin's jaw in three places when he hit her. A security camera recorded the confrontation. The entire episode lasted less than two minutes.

The State charged Mainville with a severity level 4 felony—knowing aggravated battery and criminal threat.

Mainville requested a jury instruction on the lesser included offense of reckless aggravated battery. The district court refused, finding no facts that suggested Mainville's behavior was reckless. Mainville also requested an instruction on self-defense. The district court gave part of that requested instruction on the use of deadly force.

The jury found Mainville guilty as charged. The district court sentenced Mainville to 154 months in prison.

*Mainville raises three contentions in this appeal.*

Mainville first contends that the district court erred in refusing to instruct the jury on reckless aggravated battery as a lesser included offense of knowing aggravated battery. He argues that the requested instruction was legally appropriate as a lesser degree of the same crime and factually appropriate because there was some evidence that could support reckless aggravated battery—Mainville's testimony that he did not intend to hit Griffin and had misjudged the distance when he swung the object to scare her away. He contends the district court must have improperly weighed the evidence before denying his request to instruct the jury on his reckless conduct. He argues this failure to properly instruct the jury denied him his fundamental right to present his defense because the jury was not given the option of finding that Mainville's conduct was reckless.

Next, Mainville contends the district court erred when it elected to only give a self-defense instruction as it related to the use of deadly force rather than the use of self-

3

defense against another person's use of unlawful force. In other words, as given, the instruction stated he was entitled to self-defense only against deadly force not unlawful force. He argues the jury could have concluded he was using physical force but not deadly force because he used a dildo rather than a gun or a knife. He argues he knew Griffin could be a violent person and felt threatened and needed to defend himself after Griffin came to his door.

Finally, Mainville contends that the cumulative effect of the district court's errors denied him a fair trial. But Mainville has only shown one error. The cumulative error rule does not apply if there is only a single error. *State v. Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023). Thus, the rule has no application here.

*We must follow several basic rules when considering the use of jury instructions.*

We use a multi-step process when reviewing challenges to jury instructions. We look to see if there is jurisdiction, if the issue is preserved for appeal, and if the instruction is factually and legally appropriate:

> "First, the court considers the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; next, the court applies an unlimited review to determine whether the instruction was legally appropriate; then, the court determines whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and, finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). [Citation omitted.]" *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023).

4

There is no question of jurisdiction here. Mainville requested a reckless instruction, and the court denied that request; therefore, the issue has been preserved for our review.

Turning to legal appropriateness, we must point out that generally a jury instruction on a lesser degree of the same crime is legally appropriate. K.S.A. 21-5109(b)(1); *State v. Phillips*, 312 Kan. 643, 668, 479 P.3d 176 (2021). A lesser included offense instruction is factually appropriate when there is some evidence that would reasonably justify a conviction of a lesser crime. *State v. Lowe*, 317 Kan. 713, 718, 538 P.3d 1094 (2023). We will apply that test here.

*Was it reversible error to fail to give a reckless aggravated battery jury instruction?*

We first look at the charges. The State charged Mainville with knowingly causing great bodily harm or disfigurement to Griffin in violation of K.S.A. 21-5413(b)(1)(A), a severity level 4 person felony. A lesser degree of the same crime is "recklessly causing great bodily harm to another person or disfigurement of another person" under K.S.A. 21-5413(b)(2)(A), a severity level 5 person felony. But we must look into other statutes as well.

We turn to the statutory definitions. "A person acts 'knowingly,' . . . when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 21-5202(i). "A person acts 'recklessly' . . . when such person consciously disregards a substantial and unjustifiable risk . . . that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j). The conduct is defined differently and that difference gives rise to the difference in the penalty for each crime. The "knowing" crime receives a more severe penalty than the "reckless" version of the crime.

5

The State concedes the district court erred by failing to give the requested reckless aggravated battery instruction as the instruction was both legally and factually appropriate. The State argues the district court's error was nevertheless harmless. The State argues that Mainville's defense was simply not believable given the video evidence and the contradictory statements Mainville made. That concession moves our inquiry to a question of harmlessness.

We apply the statutory harmless error test to this instructional error. See *State v. James*, 309 Kan. 1280, 1301-02, 443 P.3d 1063 (2019). Thus, we must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial. *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011). The burden of demonstrating harmlessness is on the party benefiting from the error; here that party is the State. See *State v. Nunez*, 313 Kan. 540, 550, 486 P.3d 606 (2021).

Mainville argues this case is similar to *Nunez*. In *Nunez*, Antonio Guzman was shot three times and killed. He was shot at least once while he was lying the floor. Nunez gave several different versions of what had taken place. The State charged Nunez with premeditated first-degree murder. There was substantial evidence that Nunez reasonably and honestly believed physical force was necessary—at least at first. A witness testified Guzman was holding a blade to Nunez' neck and law enforcement noted a mark on Nunez' neck. Nunez repeatedly told officers that Guzman attacked him with a knife and that he saw Guzman reaching for a knife even after he was shot and lying on the ground. A boxcutter was found close to Guzman's body.

The district court's failure to give an imperfect self-defense instruction—which Nunez had requested—may have affected the outcome of the trial because the instruction could have focused the jury's attention on Nunez's initial legitimate use of self-defense rather than his subsequent exertion of unnecessary force. *Nunez*, 313 Kan. at 551-53. We remain unpersuaded.

Here, unlike the facts in *Nunez*, there is no reasonable probability that the district court's failure to give an instruction on reckless aggravated battery affected the outcome of the trial. No witness corroborated Mainville's defense. Instead, there was a video that contradicts it. The video shows exactly what happened. While Griffin was walking away, Mainville came out of his house with an object that resembled a baseball bat. Mainville walked toward Griffin, pointed the object at her, and threatened to beat her down. When Mainville reached Griffin, he swung the object at her, hitting her in the face. He did not hesitate afterward to indicate he made a mistake by hitting her. Instead, he headed back to his house and shouted, "you're dead" and "fuck you" while pointing the object back toward her.

An instruction on recklessness may have been necessary for Mainville's defense that he acted recklessly, but considering the video evidence, there was no reasonable probability a juror would have reached a different verdict of reckless conduct. This is especially true here where Mainville had given contradictory statements to law enforcement officers. This error was harmless and is not reversible.

*Was it reversible error for the court to fail to instruct on the use of self-defense against another person's use of unlawful force?*

Mainville asked the district court to give the jury an instruction on the use of self-defense against another person's use of unlawful force. The court refused and held that it would give a self-defense instruction as it related to the use of deadly force. To us, Mainville argues that the jury could have concluded he was using physical force but not deadly force because he used a dildo rather than a gun or a knife. He argues he knew Griffin could be a violent person and felt threatened and needed to defend himself after Griffin came to his door.

7

The State does not contest that Mainville's requested instruction was legally appropriate for a charge of aggravated battery. Instead, the State argues any self-defense instruction was factually inappropriate because Mainville's testimony revealed that Mainville had acted recklessly, not intentionally. Simply put, Mainville's testimony describing his conduct was inconsistent with self-defense. The State argues that Mainville was the initial aggressor. Griffin had made no verbal threat or physical movement to indicate she was about to attack Mainville. No facts here would support a reasonable belief that self-defense was necessary.

*Our analysis begins with the statute.*

Mainville was charged with and convicted of knowingly causing great bodily harm or disfigurement. "A person acts 'knowingly' . . . when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 21-5202(i). This is not the only statute that we have to consider in deciding this question.

The self-defense statute differentiates "use of force" and "use of deadly force":

> "(a) A person is justified in the use of force against another when and to the extent it appears to such person and such person reasonably believes that such use of force is necessary to defend such person or a third person against such other's imminent use of unlawful force.
> "(b) A person is justified in the use of deadly force under circumstances described in subsection (a) if such person reasonably believes that such use of deadly force is necessary to prevent imminent death or great bodily harm to such person or a third person." K.S.A. 21-5222.

Note "use of deadly force" is broadly defined. It includes "any physical force . . . which is likely to cause death or great bodily harm to a person." K.S.A. 21-5221(a)(2).

8

See *State v. Betts*, 316 Kan. 191, 200, 514 P.3d 341 (2022). This is similar to Mainville's charges of "knowingly caus[ing] great bodily harm or disfigurement to another person."

In compliance with that statutory definition of deadly force, this jury was instructed on the circumstances in which the defendant could use force likely to cause death or great bodily harm:

> "Defendant is permitted to use against another person physical force that is likely to cause death or great bodily harm *only when* and to the extent that it appears to him and he reasonably believes such force is necessary to prevent death or great bodily harm to himself from the other person's imminent use of unlawful force." (Emphasis added.)

In other words, you can use deadly force only to defend against deadly force.

But the question here boils down to this: was a self-defense instruction concerning the defendant's use of *unlawful* force in the face of the other person's imminent use of unlawful force factually appropriate here?

In determining whether an instruction was factually appropriate, a court must determine whether there was sufficient evidence—viewed in the light most favorable to the defendant or the requesting party—that would have supported the instruction. *State v. Holley*, 313 Kan. 249, 255, 485 P.3d 614 (2021).

The self-defense statute sets out a two-part test. The first part is subjective. It requires a showing that the defendant sincerely and honestly believed use of force was necessary to defend himself or others. The second part is objective. It requires a showing that a reasonable person in the defendant's circumstances would have perceived the use of force in self-defense as necessary. *State v. Turner*, 318 Kan. 162, 167, 542 P.3d 304

(2024). Our Supreme Court has cautioned against confusing the subjective and objective requirements. *State v. Qualls*, 309 Kan. 553, 557, 439 P.3d 301 (2019).

A quick review of some cases is helpful at this point. A person cannot use greater force than is reasonably necessary to resist the attack. *State v. Marks*, 226 Kan. 704, 712, 602 P.2d 1344 (1979). We evaluate whether the use of force was necessary at the point in time that the defendant used the force. See *State v. Collins*, 311 Kan. 418, 420, 429-30, 461 P.3d 828 (2020); *State v. DeLeon*, No. 125,533, 2023 WL 6531080, at *13 (Kan. App. 2023) (unpublished opinion). Self-defense requires that the danger be imminent or near at hand. A history of violence by the victim does not transform an otherwise innocuous situation into an imminently dangerous one. See *State v. White*, 284 Kan. 333, 351, 161 P.3d 208 (2007).

There are real limits to the use of self-defense instructions. Self-defense is unavailable to a person who "initially provokes the use of any force against such person or another," unless certain conditions are met. K.S.A. 21-5226(c); see *Turner*, 318 Kan. at 167. Those conditions relate to reasonable grounds to believe there is imminent danger or a withdrawal of the use of force:

> "(1) Such person has reasonable grounds to believe that such person is in imminent danger of death or great bodily harm, and has exhausted every reasonable means to escape such danger other than the use of deadly force; or
> "(2) in good faith, such person withdraws from physical contact with the assailant and indicates clearly to the assailant that such person desires to withdraw and terminate the use of such force, but the assailant continues or resumes the use of such force." K.S.A. 21-5226(c).

This initial aggressor statute applies when the defendant initially provokes the use of any force, not just physical force. *Collins*, 311 Kan. at 430. "Use of force" includes threats of force:

"'Use of force' means any or all of the following directed at or upon another person or thing: (A) Words or actions that reasonably convey the threat of force, including threats to cause death or great bodily harm to a person; (B) the presentation or display of the means of force; or (C) the application of physical force, including by a weapon or through the actions of another." K.S.A. 21-5221(a)(1).

Mainville was entitled to a self-defense instruction if there was competent evidence to support it. "Competent evidence is that which could allow a rational fact finder to reasonably conclude that the defense applies." *Qualls*, 309 Kan. at 558.

*Some testimony helps us to rule on this point.*

When Mainville came back outside, there was considerable distance between him and Griffin. When he pointed his weapon at her, she did not leave. Mainville believed Griffin was threatening him. He said he "really couldn't understand" her but her language "sounded very threatening" to him. He asked if she wanted to "get beat the fuck down." Griffin turned around and came back towards him. He then advanced on her. Mainville closed the distance between them. He stated he swung the object at Griffin to scare her off his property and did not intend to hit her. He claims he misjudged the distance and struck her by accident. He also testified he felt threatened and needed to defend himself. He believed he struck her on the shoulder.

When Detective Jonathan Shepard interviewed Mainville as part of his investigation, Mainville initially stated that he slipped and accidentally struck Griffin in the jaw. Later in the interview, Mainville said he did not think he hit her. Mainville said he thought the object he used was a hockey stick. Mainville claimed Griffin threatened she was going to kill him. But the video showed Griffin did not make that comment.

In some cases, a defendant's testimony alone is competent evidence to support a self-defense instruction:

11

"Even if the only evidence supporting the defendant's theory consists of the defendant's own testimony, which may be contradicted by all other witnesses and by physical evidence, the defendant may have met his or her burden of showing that a reasonable person in his or her circumstances would have perceived the use of deadly force as necessary self-defense." *Qualls*, 309 Kan. at 557-58.

But when the defendant's testimony is not dispositive, a court can consider evidence outside the defendant's testimony to determine whether there was evidence for a rational fact-finder to reasonably conclude self-defense was appropriate. See *State v. Salary*, 301 Kan. 586, 593, 343 P.3d 1165 (2015). Specifically, the court can consider video evidence to determine whether the defendant was entitled to a self-defense instruction because a reasonable person in the defendant's position would have believed force was necessary. See *State v. McCullough*, 293 Kan. 970, 976, 270 P.3d 1142 (2012).

Mainville's testimony can support the subjective component of self-defense. But his testimony does not support the objective component of self-defense. In other words, he may have had a subjective belief that use of force was necessary because he believed Griffin was imminently threatening him, but that belief was objectively unreasonable. Mainville testified he could have stayed inside his house but that he went back outside with a weapon and advanced on Griffin.

Generally, Kansas cases hold that when a defendant leaves a confrontation with a person and returns with a weapon and attacks that person, that defendant is ineligible for a self-defense instruction. *Salary*, 301 Kan. at 597. In that case the court held that Salary was ineligible for a self-defense instruction because uncontroverted facts showed he left a confrontation with a person and then returned with a loaded firearm and shot that person. 301 Kan. at 597-98; see also *State v. Miller*, No. 119,763, 2019 WL 3850689, at *5 (Kan. App. 2019) (unpublished opinion) (holding that a self-defense instruction was factually inappropriate where Miller left a situation and could have stayed away but chose to return and thus became the initial aggressor).

12

Frankly, the video evidence shows that a reasonable person in Mainville's position would not have believed use of any force was necessary to defend himself against an imminent use of unlawful force. The video shows that Griffin was indeed yelling at Mainville but was not yelling any threats to harm Mainville. Griffin was on the neighboring property and was walking away when Mainville came out of his house with a weapon and pointed the weapon at Griffin.

This was the first "use of force" within the meaning of K.S.A. 21-5221(a)(1), making Mainville the initial aggressor under K.S.A. 21-5226(c). Rather than attempt to withdraw or escape, Mainville then threatened to beat down Griffin, approached her, and struck her. Griffin did not make any verbal threats of force or actions that reasonably conveyed a threat of force. She neither displayed a weapon nor applied any physical force to Mainville.

Even viewed in the light most favorable to Mainville, there was no competent evidence to show a reasonable person in Mainville's circumstances would think that the use of force was necessary to defend against an imminent use of unlawful force by Griffin. Simply put, Griffin made no aggressive actions.

To sum up, Mainville was not entitled to this instruction and the court did not err by not giving it.

Finally, as we said earlier, the cumulative error rule does not apply if there is only a single error as there is here. *Lowry*, 317 Kan. 89, 100, 524 P.3d 416 (2023).

Affirmed.

13

HURST, J., concurring in part and dissenting in part: Mainville brings two claims related to jury instruction error. While I join the majority in finding no error resulted from the district court's refusal to instruct the jury on imperfect self-defense, I disagree with the majority's finding that the court's refusal to instruct on reckless aggravated battery was harmless error.

The State charged Mainville with knowing aggravated battery, and he requested that the court include a jury instruction on the lesser included offense of reckless aggravated battery. The district court refused to give the instruction.

The State, Mainville, the majority of this panel, and I all agree that the district court's refusal to include the reckless aggravated battery instruction was an error. When "there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged *and any such lesser included crime*." (Emphasis added.) K.S.A. 22-3414(3). The reckless aggravated battery instruction was both factually and legally appropriate. See, e.g., K.S.A. 21-5109(b)(1) (generally lesser included offenses are legally appropriate); *State v. Lowe*, 317 Kan. 713, 718, 538 P.3d 1094 (2023) (lesser included offense instruction is factually appropriate when there is some evidence that would reasonably justify a conviction on that lesser offense). Where the majority and I diverge is whether that error—the failure to include a legally and factually appropriate instruction on the lesser included offense of reckless aggravated battery—was harmless.

This error only requires reversal if it was not harmless. Harmless error rules are applied to limit reversals "'for small errors or defects that *have little, if any, likelihood of having changed the result of the trial*.'" *State v. Ward*, 292 Kan. 541, 560, 256 P.3d 801 (2011). However, not all harmlessness standards are the same, and the context of the

14

error dictates the standard to be applied. See *State v. Berkstresser*, 316 Kan. 597, 606, 520 P.3d 718 (2022). When the defendant requests a legally and factually appropriate jury instruction and the district court refuses to provide the instruction—which is what occurred here—the harmlessness standard requires a lower degree of certainty as to whether the error affected the trial outcome. *State v. James*, 309 Kan. 1280, 1304, 443 P.3d 1063 (2019).

As the party benefiting from the error, the State carries the burden to demonstrate harmlessness. *James*, 309 Kan. at 1302. Therefore, this court can only find the district court's error was harmless if the State demonstrates that "'there is *no reasonable probability* that the error will or did affect the outcome of the trial.'" (Emphasis added.) 309 Kan. at 1304; see also *Ward*, 292 Kan at 565. A reasonable probability is not certainty, but it is more than a theoretical possibility. See, e.g., *James*, 309 Kan. at 1304. In considering whether the State demonstrated there is no reasonable probability this error affected the trial, it may help to consider the more stringent harmlessness standard. Had Mainville failed to request the reckless aggravated battery jury instruction, this court would have applied the clear error standard, which would require the court to be "firmly convinced the jury *would have* reached a different verdict had this instructional error not occurred." (Emphasis added.) *Berkstresser*, 316 Kan. at 598.

Therefore, under the lower harmlessness standard applied here, the court need not be convinced that a juror *would have chosen* to find Mainville guilty of reckless rather than knowing aggravated battery. Rather, this court must only be convinced that there is a *reasonable probability* that any single juror would have believed that Mainville's conduct constituted reckless aggravated battery rather than knowing aggravated battery. Here, we need not be convinced that a juror would have chosen the lesser included offense but rather that a reasonable probability exists that one would have.

15

Here, the lesser included jury instruction required a lower *mens rea* than the crime of conviction but did not require proof of additional or different acts. Aggravated battery is "[k]nowingly causing great bodily harm to another person or disfigurement of another person" and reckless aggravated battery is "recklessly causing great bodily harm to another person or disfigurement of another person." K.S.A. 21-5413(b)(1)(A); (b)(2)(A). A person acts knowingly "with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 21-5202(i). "A person acts 'recklessly' . . . when such person consciously disregards a substantial and unjustifiable risk . . . that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 21-5202(j).

So, the difference relates to the degree of Mainville's consciousness of the resulting harm—whether Mainville acted with *reasonable certainty* to cause the harm or whether he acted with *conscious disregard* for a substantial and unjustified risk that his actions could cause the harm. As a panel of this court explained when evaluating the sufficiency of the evidence to support a reckless aggravated battery conviction, the difference between knowing and reckless aggravated battery is the defendant's state of mind related to causing the great bodily harm or disfigurement, "not whether the defendant intentionally committed the act that caused the harm or disfigurement." *State v. Trefethen*, No. 119,981, 2021 WL 1433246, at *6 (Kan. App. 2021) (unpublished opinion). Therefore, to find the district court's error harmless, the State was required to demonstrate that there was *no reasonable probability* that any juror would have believed that Mainville's act of intentionally swinging an object at Griffin was done in conscious disregard of substantial and unjustifiable risk of great bodily harm to Griffin rather than with reasonable certainty of the great bodily harm to Griffin that would result.

Therefore, evidence regarding Mainville's state of mind at the time is relevant to the issue of whether he acted with conscious disregard of a substantial and unjustifiable

16

risk (recklessly) or with reasonable certainty to cause great bodily harm (knowingly). See, e.g., *State v. Perez-Medina*, 310 Kan. 525, 448 P.3d 446 (2019). In *Perez-Medina*, the Kansas Supreme Court found it was harmless error when the district court refused to give a requested reckless aggravated battery instruction when the "only evidence of what occurred in that moment came from the victim" who testified that the defendant "grabbed him without warning from behind and reached around to cut him immediately." 310 Kan. at 538. Although there was evidence of Perez-Medina's intoxication at the time of the event, he did not testify and there was no evidence refuting or undermining the victim's account. The court explained that the victim testified "there was no provocation—no prior argument or disagreement between himself and Perez-Medina. There was no ongoing fight in which the obviously intoxicated Perez-Medina was swinging a knife wildly or, at a minimum, indiscriminately." 310 Kan. at 538.

Here, the majority relies on the video of the battery to find that the State demonstrated there was no reasonable probability that a single juror could view that video, hear Mainville's testimony regarding his state of mind, and determine that Mainville acted to recklessly, rather than knowingly, harm Griffin. I do not find the video so definitive. Moreover, it is not the appellate court's place to weigh the evidence and determine the definitiveness of the video. This does not mean that I believe Mainville acted with conscious disregard rather than reasonable certainty—but merely that the State failed to demonstrate there was no reasonable probability that a single juror would have found such. While the video shows Mainville raise his arm while holding a long object in his hand and swing in Griffin's direction, it also shows that it was not Mainville's immediate or only action.

Before Mainville went outside, the video shows Griffin walking around talking loudly while loud music plays—apparently near or on Mainville's property. Mainville then went outside and yelled at Griffin to turn down the music—there was an obvious dispute. Griffin yelled back at Mainville while walking toward him. Mainville returned

17

inside his residence while Griffin yelled and walked back and forth outside Mainville's door. Mainville then returned outside with a long object in his hand pointed at Griffin while directing her to leave. Griffin made small movements toward Mainville while yelling, and then Mainville approached Griffin while pointing the object, threatening Griffin, and directing her to leave—all while Griffin continued to yell. Mainville swung the object at Griffin and hit her in the face. Mainville then immediately retreated, appearing surprised.

While the majority's eyes view this video one way—seeing knowing conduct—I cannot say that there is no reasonable probability that another's eyes could see recklessness in this altercation, particularly in light of Mainville's testimony. Mainville testified that he swung the object at Griffin to scare her off his property and that he was threatened by her conduct. He claimed he misjudged the distance and struck her by accident. While Mainville's testimony is, of course, self-serving, whether the video wholly undermines his testimony is not definitive and thus not for me to decide. It is the purview of the fact-finder to weigh the evidence and witness credibility to determine the proper result. Here the fact-finder was not given that opportunity. For that reason, I must dissent.